**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| HASBRO, INC., Plaintiff, | Civil Action No. CA 04-448 S |
| vs. | |
| ROSE ART INDUSTRIES, INC., Defendant. | |

**DEFENDANT ROSE ART INDUSTRIES, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS AND ROSE ART'S CROSS-MOTION TO STAY PROCEEDINGS**

Now comes Defendant Rose Art Industries, Inc. ("Rose Art") who hereby moves for an order to stay this action pending the United States Patent and Trademark Office's disposition of both Plaintiff Hasbro, Inc.'s ("Hasbro's") reissue patent application and Rose Art's copending inter partes reexamination proceeding regarding the patent at issue in this litigation. The grounds for this cross-motion are set forth in the Memorandum of Law and Declaration of Ralph W. Selitto, Jr. filed simultaneously herewith.

Dated: June 10, 2005

Attorneys for Defendant,
Rose Art Industries, Inc.

HANSON CURRAN LLP

James T. Murphy, Esq. #1698
Megan J. Goguen, Esq. # 6265
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154 – Telephone
(401) 521-7040 – Fax

Robert W. Smith, Esq. (pro hac vice)
Ralph W. Selitto, Jr., Esq. (pro hac vice)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel. (973) 622-4444
Fax. (973) 624-7070

**PROOF OF SERVICE**

I hereby certify that on this 10th day of June, 2005, I served the within document by regular mail and emailing a copy of same to **John A. Tarantino, Esq., Todd D. White, Esq. and Linda A. Mayer.**, ADLER, POLLOCK & SHEEHAN, P.C., 2300 Financial Plaza, Providence, RI 02903; and to **Albert L. Ferro, Esq. and David K.S. Cornwell, Esq.,** Sterne Kessler Goldstein & Fox P.L.L.C., 1100 New York Avenue N.W., Washington D.C. 20005.

Lori Ferrante
of Hanson Curran LLP

NWK2: 1319285.01
67895-40152

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HASBRO, INC.,

Plaintiff,

vs.

ROSE ART INDUSTRIES, INC.,

Defendant.

Civil Action No. CA 04-448 S

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS AND IN SUPPORT OF CROSS-MOTION TO STAY PROCEEDINGS**

James T. Murphy, Esq.
Megan J. Goguen, Esq.
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Robert W. Smith, Esq.
Ralph W. Selitto, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Attorneys for Defendant
Rose Art Industries, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

PROCEDURAL AND FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 4

POINT I: A Stay of the Litigation Pending Both the Disposition of the Reissue Application and Reexamination Proceeding is Warranted .......... 4

CONCLUSION .......... 8

# TABLE OF AUTHORITIES

## CASES

ASCII Corp. v. STD Entertainment USA, Inc., 844 F.Supp. 1378 (N.D. Calif. 1994) ....... 4, 6

Emhart Industries, Inc. v. Sankyo Seki Mfg. Co., Ltd., 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987) ....... 5, 7

Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ....... 4, 7

Fisher Controls Co. v. Control Components Inc., 443 F.Supp. 581 (S.D. Iowa 1977) ....... 5

Gould v. Control Laser Corp., 705 F.2d 1340 (Fed. Cir. 1983) ....... 4, 6

GPAC, Inc. v. D.W.W. Enterprises, Inc., 23 U.S.P.Q.2d 1129 (D.N.J. 1992) ....... 6

Lentek International, Inc. v. Sharper Image Corp., 169 F.Supp.2d 1360 (M.D. Fla. 2001) ....... 4

Tap Pharmaceutical Products, Inc. v. Atrix Laboratories, Inc., 70 U.S.P.Q.2d 1319 (N.D. Ill. 2004) ....... 5-7

## STATUTES AND REGULATIONS

35 U.S.C. §§102-103 ....... 3

35 U.S.C. §§311-318 ....... 2

35 U.S.C. §312 ....... 3

35 U.S.C. §314(c) ....... 3, 7

37 C.F.R. §1.902 et seq. ....... 2, 3

37 C.F.R. §1.937(a) ....... 7

## OTHER

Manual of Patent Examining Procedure (MPEP) §2686.03 ....... 3

## PRELIMINARY STATEMENT

This is an action by Hasbro, Inc. (hereinafter "Hasbro") against Rose Art Industries, Inc. (hereinafter "Rose Art") for patent infringement and trade dress infringement. Hasbro has alleged that the manufacture, use and sale of Rose Art's LITEART Activity Cube constitutes an infringement of Hasbro's U.S. Patent No. 6,729,932 (the "'932 Patent"). Rose Art asserts that the '932 Patent is invalid in view of, among other things, prior art references that were not considered during the prosecution of the '932 Patent.

Hasbro recently filed a reissue patent application for the '932 Patent in the United States Patent and Trademark Office ("USPTO"). As a result, Hasbro has moved to stay the present action pending the disposition of its reissue application.

In the meantime, Rose Art has filed an inter partes reexamination proceeding for the '932 Patent in the USPTO. The reexamination procedures of the USPTO allow any person to challenge the patentability of the claims of any issued United States patent on the basis of prior art patents or publications that were not considered during the examination of the issued patent. The outcome of the reexamination proceeding filed by Rose Art (as well as the reissue application filed by Hasbro) will have a significant impact on the present litigation and may simplify the issues. While Rose Art does not object to a stay of the present action in and of itself, Rose Art respectfully submits that any stay that is granted by the Court should remain in effect until the conclusion of both the reissue application <u>and</u> the inter partes reexamination proceeding. In addition, if a stay is granted by the Court, then, for the sake of economy, the entire action, including the patent infringement and trade dress infringement claims, should be stayed. Accordingly, Rose Art moves to stay the present action in its entirety pending the disposition of <u>both</u> Hasbro's reissue patent application <u>and</u> the inter partes reexamination proceeding filed by Rose Art.

## PROCEDURAL AND FACTUAL BACKGROUND

On October 15, 2004, Hasbro filed a Complaint against Rose Art for patent infringement and trade dress infringement. On November 18, 2004, Rose Art filed an Answer, Affirmative Defenses and Counterclaims (the "Counterclaim"). On December 13, 2004, Hasbro filed its Reply to Rose Art's Counterclaim. On May 23, 2005, Rose Art filed an Amended Answer, Affirmative Defenses and Counterclaims, which Hasbro responded to on June 6, 2005. To date, no significant discovery has occurred.[1]

On May 16, 2005, Hasbro filed a reissue patent application for the '932 Patent in the USPTO. The reissue application forms the basis for Hasbro's present motion to stay the proceedings pending the outcome of its reissue application.

In the course of preparing its defense in the instant matter, Rose Art uncovered several prior art patents that raise substantial issues regarding the patentability of the claims of the '932 Patent.[2] At least three of the patents uncovered by Rose Art were not considered by the USPTO during the prosecution of the original application for the '932 Patent. Pursuant to the procedures available under 35 U.S.C. §§311-318 and 37 C.F.R. §1.902 et seq., Rose Art filed a request for inter partes reexamination of the '932 Patent in the USPTO on June 10, 2005. In its reexamination request, Rose Art cited each of the prior art patents it uncovered with a view toward determining whether the claims of the '932 Patent are directed to a patentable invention. A copy of the request for inter partes reexamination prepared and filed by Rose Art is annexed to the within Declaration as Exhibit A.

---

[1] As indicated by Hasbro in its Memorandum of Law in support of its present motion, each party has only served one set of interrogatories and one set of document requests, and only non-confidential responses to the interrogatories and non-confidential documents have been exchanged. See Hasbro's Memorandum of Law, p. 3. Furthermore, no depositions have been taken by either party. See Hasbro Memorandum of Law, p. 3.

[2] At least five, and possibly more, patents teach or suggest each element of the '932 Patent, rendering the claims of the patent as unpatentable. See U.S. Patent Nos. 2,575,269 to Hall; 3,604,709 to Svetz; 5,324,224 to Anderson; 6,032,393 to Maxim; and 6,186,504 to Maxim.

The reexamination procedures of the USPTO allow any person to challenge the patentability of the claims of a United States patent on the basis of other prior art patents or publications that were not considered during the examination of the issued patent. See 35 U.S.C. §312. The USPTO determines within three months after the filing of a request for reexamination whether or not the prior art references cited by the requester raise a "substantial new question related to patentability." See 35 U.S.C. §312. For example, a substantial new question related to patentability may be found where the newly cited prior art patents or publications teach or suggest each element of the claims of the patent for which reexamination is sought. If the USPTO determines that a substantial new question related to patentability is raised, the USPTO will then reexamine the patent in view of the newly cited prior art references. The USPTO may ultimately conclude that the claims of the issued patent are unpatentable in view of the newly cited prior art references. For example, if one or more prior art references disclose each limitation of the claimed invention, or render the invention obvious, the patent claims will be unpatentable. See generally 35 U.S.C. §§ 102 and 103. Furthermore, the claims of the patent may be amended by the patent owner during reexamination, thereby affecting the scope of protection afforded by the patent. The outcome of a reexamination proceeding can, therefore, have a tremendous impact on the patent and any litigation involving the patent.

The validity of the '932 Patent is a crucial issue underpinning the present litigation. The outcome of the reexamination proceeding filed by Rose Art will have a significant impact on the present proceedings and may greatly simplify the issues. Accordingly, Rose Art respectfully requests that this Court grant its motion to stay the present action pending the disposition of both Hasbro's reissue patent application and Rose Art's inter partes reexamination proceeding.[3]

[3] There is a very good chance that the USPTO will merge the reissue and reexamination proceedings in order to permit "timely resolution" of both and to prevent inconsistent and conflicting amendments from being introduced in the two proceedings. MPEP 2686.03. Even if the two proceedings are not merged, it is likely that the reexamination proceeding will continue and the reissue proceeding will be stayed, since reexamination must be conducted with "special dispatch." Id.; 35 U.S.C. §314(c). Only in "exceptional instances" will reexamination be stayed and the reissue proceeding continue (e.g., the reissue patent will soon issue, etc.), which is not the case here.

## LEGAL ARGUMENT

## POINT I

## A STAY OF THE LITIGATION PENDING BOTH THE DISPOSITION OF THE REISSUE APPLICATION AND REEXAMINATION PROCEEDING IS WARRANTED

A district court has the power to stay an infringement action pending the outcome of a reexamination proceeding. Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983); see also Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). The granting of a stay is within the district court's discretion. Id. However, there is a liberal policy in favor of granting motions to stay patent infringement litigation pending the outcome of USPTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc., 844 F.Supp. 1378, 1381 (N.D. Calif. 1994); see also Lentek International, Inc. v. Sharper Image Corp., 169 F.Supp.2d 1360, 1362, n.2 (M.D. Fla. 2001).

Courts have cited a number of advantages that would result from a stay of district court proceedings pending the disposition of a reexamination proceeding. These advantages are enumerated in Hasbro's Memorandum of Law, but are provided herein for convenience:

1. All prior art presented to the Court will have been first considered by the USPTO with its particular expertise;

2. Many discovery problems relating to prior art can be alleviated by the USPTO examination;

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed;

4. The outcome of the reexamination may encourage a settlement without further use of the Court;

5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination; and

7. The cost will likely be reduced both for the parties and the Court.

Emhart Industries, Inc. v. Sankyo Seki Mfg. Co., Ltd., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (citing Fisher Controls Co. v. Control Components Inc., 443 F.Supp. 581, 582 (S.D. Iowa 1977)). These advantages apply equally to reissue proceedings and reexamination proceedings. Emhart, 3 U.S.P.Q.2d at 1892, n.1 (noting that the advantages of shifting the validity issue to the USPTO are the same in both reissue proceedings and reexamination proceedings).[4]

When ruling on whether a stay is appropriate, courts have considered the following factors: (1) the progression of the case and whether substantial discovery and trial preparations have taken place; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and the court. Tap Pharmaceutical Products, Inc. v. Atrix Laboratories, Inc., 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004). Each of these factors weighs in favor of staying these proceedings pending the USPTO's disposition of both the reissue patent application filed by Hasbro and the inter partes reexamination proceeding filed by Rose Art concerning the '932 Patent.

1. Progression of the Case

The Court should consider whether a case has substantially progressed before determining whether to grant a stay. See Emhart, 3 U.S.P.Q.2d at 1891. If no substantial discovery has taken place and no trial preparations have been carried out, the grant of stay is appropriate. Id. (granting a stay of 18 months after substantial discovery but no trial preparations); see also Gould, 705 F.2d at 1341 (granting a stay of 5 years after the

[4] In fact, many, if not all, of the arguments presented by Hasbro in support of a stay of the proceedings pending the disposition of its reissue application equally support Rose Art's present motion as well.

commencement of litigation and 20 days before start of trial); GPAC, Inc. v. D.W.W. Enterprises, Inc., 23 U.S.P.Q.2d 1129, 1133 (D.N.J. 1992) (granting a stay where substantial discovery had not yet occurred); ASCII, 844 F. Supp. at 1381 (granting a stay where trial not yet scheduled and little discovery undertaken).

Rose Art has filed a request for reexamination less than eight months after the commencement of the action and almost concurrently with the filing of Hasbro's reissue application. As acknowledged by Hasbro, there has been very little discovery conducted by the parties and the case has yet to be scheduled for trial. Accordingly, this factor weighs heavily in favor of staying the instant proceedings.

2. No Prejudice to Either Party

As acknowledged by Hasbro in its Memorandum of Law, neither party would be prejudiced if a stay pending the disposition of the reexamination proceeding and the reissue application is granted. See Hasbro Memorandum of Law, p. 3. Both parties have filed proceedings in the USPTO for the purpose of determining the patentability of the claims of the '932 Patent. Consequently, both parties desire a stay of the present litigation pending the disposition of the USPTO proceedings. Thus, neither party will be unduly prejudiced or gain an unfair or tactical advantage over the other party.

3. Simplification of the Issues

One of the purposes of reexamination is to eliminate or simplify the issue of validity at trial or facilitate trial of the issue by providing the district court with the expert view of the USPTO. Tap Pharmaceutical, 70 U.S.P.Q.2d at 1320. Courts have generally acknowledged that the USPTO is in a unique position to evaluate the patentability of patent claims. Advantages in shifting the issue of patentability (i.e., validity) of patent claims to the

USPTO include the technical expertise of the USPTO, reduction of costs for both parties and the Court, limitation of issues, defenses, and evidence during reexamination, encouragement of settlement between the parties, and reduction of the complexity and length of the trial. See Emhart, 3 U.S.P.Q.2d at 1892; Ethicon, 849 F.2d at 1427 ("commenting that the PTO's expertise does not exist elsewhere").

In the present case, the USPTO is a preferred forum for determining issues regarding the patentability of the '932 Patent. The claims of the '932 Patent are technical in nature, and the USPTO possesses the technical qualifications necessary to deal with such issues. A patent examiner who is familiar with the technology involved in the patent would conduct the reexamination and is obligated to do so "with special dispatch." 35 U.S.C. §314(c); 37 C.F.R. §1.937(a). Thus, a determination by the USPTO of the patentability of the claims of the '932 Patent will greatly assist the Court in simplifying the issues and reducing the complexity and length of trial. Therefore, this factor also weighs in favor of staying the present litigation pending the outcome of the reexamination proceeding and the reissue application.

4. Reduction of Burden Created by Litigation

As noted above, reexamination will assist the parties and the Court in adjudicating Hasbro's claim of patent infringement. There is a good chance that the USPTO will cancel the claims of the '932 Patent on the basis that they are not directed to a patentable invention, thereby effectively invalidating the patent. Even if the claims of the '932 Patent are not entirely canceled, the scope of such claims may, in fact, be altered during reexamination, which could significantly affect whether a claim of infringement of the '932 Patent can be sustained. This creates a possibility that the parties will waste time and money litigating over issues that could ultimately be rendered moot by the USPTO. Tap Pharmaceuticals, 70 U.S.P.Q.2d at 1320.

Thus, any simplification of the issues will allow both parties and the Court to conserve time and resources. Id. Accordingly, this factor further weighs in favor of staying the present litigation pending the conclusion of both the reexamination and reissue proceedings.

## CONCLUSION

For the foregoing reasons, Rose Art respectfully requests that the Court grant Rose Art's cross-motion to stay the present action pending the USPTO's disposition of both the reissue patent application filed by Hasbro and the inter partes reexamination proceeding filed by Rose Art concerning the '932 Patent, and granting Rose Art such other and further relief as is just and proper.

Dated: June 10, 2005

Attorneys for Defendant,
Rose Art Industries, Inc.

Respectfully submitted,

By: [signature]

James T. Murphy, Esq.
Megan J. Goguen, Esq.
HANSON CURRAN, LLP
146 Westminster Street, The Francis Bldg.
Providence, Rhode Island 02903-2218
Tel. No. (401) 421-2154
Fax No. (401) 521-7040

Robert W. Smith, Esq. (pro hac vice)
Ralph W. Selitto, Jr., Esq. (pro hac vice)
McCARTER & ENGLISH, LLP
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102-4056
Tel. No. (973) 622-4444
Fax No. (973) 624-7070

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HASBRO, INC., | : | |
| Plaintiff, | : | Civil Action No. CA 04-448 S |
| vs. | : | |
| ROSE ART INDUSTRIES, INC., | : | |
| Defendant. | : | |

**DECLARATION OF RALPH W. SELITTO, JR.**

I, RALPH W. SELITTO, JR., declare pursuant to 28 U.S.C. §1746 and under the penalty of perjury of the laws of the United States of America that the following is true and correct:

1. I am member of the law firm of McCarter & English, LLP, counsel for Defendant Rose Art Industries, Inc. ("Rose Art"), and I submit this Declaration in support of Rose Art's Response to Plaintiff Hasbro, Inc.'s ("Hasbro's") Motion to Stay Proceedings and Rose Art's Cross-Motion to Stay Proceedings.

2. On June 10, 2005, McCarter & English, LLP filed, on behalf of Rose Art, with the United States Patent and Trademark Office a Request for Inter Partes Reexamination of Hasbro's U.S. Patent No. 6,729,932 (the "'932 Patent").

3. Attached hereto as Exhibit A are true and correct copies of Rose Art's Request for Inter Partes Reexamination and all supporting documentation, except for copies of the prior art references (i.e., patent references) that were cited in support of the reexamination request.

Executed this 10th day of June, 2005, at Newark, New Jersey.

Ralph W. Selitto, Jr.

PTO/SB/58 (04-04)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO - 1465)

# REQUEST FOR *INTER PARTES* REEXAMINATION TRANSMITTAL FORM

Address to:

**Mail Stop *Inter Partes* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

**Attorney Docket No.** 67895-40209

**Date:** June 10, 2005

1. ☒ This is a request for *inter partes* reexamination pursuant to 37 CFR 1.913 of patent number 6,729,932 issued May 4, 2004. The request is made by a third party requester, identified herein below.

2. ☒ a. The name and address of the person requesting reexamination is:
   Rose Art Industries, Inc.
   6 Regent Street
   Livingston, New Jersey 07039

   b. The real party in interest (37 CFR 1.915(b)(8)) is: Rose Art Industries, Inc.

3. ☐ a. A check in the amount of $ ________ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(2);

   ☒ b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c )(2) to Deposit Account No. 501402 (submit duplicate of this form for fee processing); or

   ☐ c. Payment by credit card. Form PTO-2038 is attached.

4. ☒ Any refund should be made by ☐ check or ☒ credit to Deposit Account No. 501402. 37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. ☒ A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed. 37 CFR 1.915(b)(5)

6. ☐ CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table

7. ☐ Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, all of the following are necessary*

   a. ☐ Computer Readable Form (CRF)

   b. Specification Sequence Listing on:

      i ☐ CD-ROM (2 copies) or CD-R (2 copies); or

      ii ☐ paper

   c. ☐ Statements verifying identity of above copies

8. ☒ A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. ☒ Reexamination of claim(s) 1-41 is requested.

10. ☒ A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on Form PTO-1449 or equivalent.

11. ☐ An English language translation of all necessary and pertinent non-English language patents and/or printed publications is included.



This collection of information is required by 37 CFR 1.915. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed forms. Time will vary depending upon the needs of the individual case. Any comments on the amount of time ou require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Mail Stop *Inter Partes* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/58 (04-04)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. ☒ The attached detailed request includes at least the following items:
   a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.915(b)(3)
   b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.915(b)(1) and (3)

13. ☒ It is certified that the estoppel provisions of 37 CFR 1.907 do not prohibit this reexamination. 37 CFR 1.915(b)(7)

14. ☒ a. It is certified that a copy of this request has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
The name and address of the party served and the date of service are:
Martin J. Hirsch, Esq. c/o Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
Date of Service: June 10, 2005 ; or

☐ b. A duplicate copy is enclosed since service on patent owner was not possible.

15. Correspondence Address: Direct all communications about the application to:

☒ Customer Number: 27614

*OR*

| | | | | | |
|---|---|---|---|---|---|
| ☐ Firm or Individual Name | Ralph W. Selitto, Jr., c/o McCarter & English, LLP | | | | |
| Address (line 1) | Four Gateway Center | | | | |
| Address (line 2) | 100 Mulberry Street | | | | |
| City | Newark | State | New Jersey | Zip | 07102-4056 |
| Country | U.S.A. | | | | |
| Telephone | 973-622-4444, Ext. 4507 | Fax | 973-624-7070 | | |

16. ☒ The patent is currently the subject of the following concurrent proceeding(s):
   ☑ a. Copending reissue Application No. To Be Assigned (filed May 16, 2005).
   ☐ b. Copending reexamination Control No. ______.
   ☐ c. Copending Interference No. ______.
   ☑ d. Copending litigation styled:

   Hasbro, Inc. v. Rose Art Industries., Inc., Civ. Action No. CA-04-448 S
   U.S. District Court, District of Rhose Island

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

[signature]
*Authorized Signature For Third Party Requester*

June 10, 2005
*Date*

Ralph W. Selitto, Jr.
*Typed/Printed Name*

26,996
*Registration Number, if applicable*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Inventor: Brian Marc Jarvis :

Assignee: Hasbro, Inc. :

Patent No.: 6,729,932 B2 :

Issued: May 4, 2004 :

Reexam Ser. No.: To Be Assigned :

For: TOY WITH ILLUMINATED POLYHEDRON :

X

Mail Stop Inter Partes Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**CERTIFICATE OF MAILING BY "EXPRESS MAIL"**

Sir:

"Express Mail" Mailing Label Number: EV 420642954 US

Date of Deposit: June 10, 2005

I hereby certify that the following documents are being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. 1.10 on the date indicated above and are addressed to Mail Stop Inter Partes Reexam, P.O. Box 1450, Alexandria, Virginia 22313-1450.

1. Request for Inter Parte Reexamination Transmittal Form PTO/SB/58 (2 pages);
2. Request For Inter Partes Reexamination, Including Statement Of Substantial New Question Of Patentability and Detailed Statement Of Pertinency Of References (48 pages);
3. Copy of U.S. Patent No. 6,729,932 B2, including Certificate of Correction;
4. Form PTO-1449 (3 pages) with copies of thirty-one (31) references; and
5. Postcard receipt (1 page).

Diane M. Bodzioch

NWK2: 1320983.01

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Inventor: Brian Marc Jarvis :

Assignee: Hasbro, Inc. :

Patent No.: 6,729,932 B2 :

Issued: May 4, 2004 :

Reexam Ser. No.: To Be Assigned :

For: TOY WITH ILLUMINATED POLYHEDRON :

X

"Express Mail" Mailing Number EV 420642954 US

Date of Deposit June 10, 2005

I hereby certify that this paper and/or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. 1.10 on the date indicated above and is addressed to Mail Stop Inter Partes Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

Diane M. Bolgurch June 10, 2005
(Signature) (Date)

Mail Stop Inter Partes Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**REQUEST FOR INTER PARTES REEXAMINATION, INCLUDING STATEMENT OF SUBSTANTIAL NEW QUESTION OF PATENTABILITY AND DETAILED STATEMENT OF PERTINENCY OF REFERENCES**

Dear Sir:

Rose Art Industries, Inc. (hereinafter "the Requester") hereby requests inter partes reexamination under 35 U.S.C. §§311-318 and 37 C.F.R. §1.913 of United States Patent No. 6,729,932 B2 which issued May 4, 2004 to Brian Marc Jarvis from an application filed on May 3, 2002 (referred to hereinafter as "the Jarvis '932 Patent"). The Jarvis '932 Patent has not yet expired and is therefore still in force.

## I. CLAIMS FOR WHICH INTER PARTES REEXAMINATION IS REQUESTED

Inter partes reexamination is requested of all of the claims (i.e., Claims 1-41) contained in the Jarvis '932 Patent on the bases of at least the following references, copies of which are attached hereto. A PTO-1449 Form listing the following references is attached hereto for the Examiner's convenience.

1. Hall U.S. Patent No. 2,575,269 issued November 13, 1951;
2. Svetz U.S. Patent No. 3,604,709 issued September 14, 1971;
3. Anderson et al. U.S. Patent No. 5,324,224 issued June 28, 1994;
4. Maxim U.S. Patent No. 6,032,393 issued March 7, 2000; and
5. Maxim U.S. Patent No. 6,186,504 issued February 13, 2001.

Each of the foregoing patents was issued more than one year before the May 3, 2002 filing date of the Jarvis '932 Patent, thereby constituting an incontestable prior art reference with respect to the Jarvis '932 Patent under 35 U.S.C. §102(b). Svetz U.S. Patent No. 3,604,709, Maxim U.S. Patent No. 6,032,393 and Maxim U.S. Patent No. 6,186,504, each of which is applied as either a primary reference or a secondary reference below, were not cited or considered during the original prosecution of the Jarvis '932 Patent.

For the sake of good order, the Requester notes that, besides the prior art references listed above, additional references are cited in the attached PTO-1449 Form. While these additional references are not specifically discussed below, they are believed to be pertinent to the patentability of the claims whose reexamination is requested herein. Accordingly, copies of these additional references are enclosed herewith for the Examiner's consideration.

## II. RELATED COURT AND ADMINISTRATIVE PROCEEDINGS

To expedite processing of this Request, the Requester notes that a patent infringement lawsuit (i.e., Civil Action No. CA-04-448 S) involving the Jarvis '932 Patent is currently pending before the United States District Court for the District of Rhode Island. More particularly, this lawsuit (referred to hereinafter as "the Hasbro v. Rose Art lawsuit") was filed by the owner of the Jarvis '932 Patent, Hasbro, Inc. (hereinafter "Hasbro"), against the Requester, alleging that Claims 30-33, 35, 40 and 41 of the patent are infringed by a product marketed by the Requester in the United States. For the reasons discussed hereinbelow, the Requester respectfully submits that Claims 30-33, 35, 40 and 41, as well as one or more of the remaining claims (i.e., Claims 1-29, 34 and 36-39), of the Jarvis '932 Patent are rendered unpatentable by the cited prior art references, which therefore raise a substantial new question of patentability affecting the claims under 35 U.S.C. §312. The Requester hence requests reexamination of the claims by the United States Patent and Trademark Office for the resolution of this question.

The Requester also notes that Hasbro filed a reissue application (hereinafter "the Jarvis Reissue Application") on or about May 16, 2005, seeking reissuance of the Jarvis '932 Patent. Subsequent to the filing of its Jarvis Reissue Application, Hasbro filed a Motion in the Court to stay the Hasbro v. Rose Art lawsuit pending the outcome of same. In response, a Cross-Motion has been filed by the Requester for the stay of the Hasbro v. Rose Art lawsuit during the pendency of the Jarvis Reissue Application, as well as the reexamination requested herein. In such circumstances, it is likely that the Hasbro v. Rose Art lawsuit will be stayed until the resolution of the Jarvis Reissue Application and/or the reexamination requested herein. Accordingly, it is respectfully requested that the United

States Patent and Trademark Office expedite its review and grant of this Request in accordance with MPEP §2686.04.

## III. STANDARDS FOR INITIATING INTER PARTES REEXAMINATION AT THE USPTO

Under 35 U.S.C. §312 and §313, an order for reexamination of a patent is granted by the United States Patent and Trademark Office if a substantial new question of patentability affecting any of the claims of the patent is raised by the requester. According to MPEP §2642, for a substantial new question of patentability to be present, it is only necessary that:

> (A) the teaching of the prior art patents and printed publications is such that a reasonable examiner would consider the teaching to be **important** in deciding whether or not the claim is patentable; and
>
> (B) [t]he same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim. (emphasis original)

Regarding Standard (A) above, MPEP §2642 specifies that "it is not necessary that a '*prima facie*' case of unpatentability exist as to the claim in order for 'a substantial new question of patentability' to be present as to the claim." Even if the claims would not be necessarily rejected based upon the cited prior art, a substantial new question of patentability could still be present and hence warrant the issuance of a reexamination order (see MPEP §2642). Further, it is only necessary that a substantial new question of patentability is present as to one of the patent claims to order reexamination (see MPEP §2640).

With respect Standard (B) above, "a previous examination" is defined in MPEP §2642 as follows: (1) the original examination of the application which matured into the patent; (2) the examination of the patent in a reissue application that has resulted in a reissue of the patent; and (3) the examination of the patent in an earlier concluded reexamination. Accordingly, a pending reissue application for which a reissue certificate has not been issued is not considered as "a previous examination" under MPEP §2642 and should not, therefore, prevent the granting of an order for reexamination. In the present case, Hasbro's Jarvis Reissue Application was filed less than a month ago; and, therefore, it is currently awaiting examination by the United States Patent and Trademark Office. In such circumstances, while the Jarvis Reissue Application cites various prior art references, including those listed above, its existence should have no impact on the United States Patent and Trademark Office's consideration and grant of this Request.

## IV. DETAILED EXPLANATION OF PERTINENCY AND MANNER OF APPLYING CITED PRIOR ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED

As discussed above, Claims 30-33, 35, 40 and 41 of the Jarvis '932 Patent have been asserted against the Requester by Hasbro in the Hasbro v. Rose Art lawsuit. In such circumstances, Claims 30-33, 35, 40 and 41, as well as Claim 34,[1] will be discussed first hereinbelow, followed by a discussion of the remaining claims of the Jarvis '932 Patent (i.e., Claims 1-29 and 36-39).

[1] Because Claim 34 depends from independent Claim 30, it will be discussed in conjunction with Claims 30-33, 35, 40 and 41.

## A. CLAIM 30 IS RENDERED UNPATENTABLE BY THE CITED PRIOR ART

Independent Claim 30 of the Jarvis '932 Patent is directed to an illumination toy for simultaneous use by a plurality of users. To facilitate consideration and discussion, Claim 30 is reproduced hereinbelow.

> 30. An illumination toy for simultaneous use by a plurality of users, comprising:
>
> an illuminated polyhedron having a base, a plurality of sides extending upwardly from the base, every side extending upwardly from the base having an interactive activity disposed thereon, wherein at least one of the sides comprises an apertured side having a plurality of apertures, and an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and
>
> a plurality of translucent pegs;
>
> wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs.

For the reasons discussed hereinbelow, it is respectfully submitted that Claim 30 is obvious in view of the cited prior art under 35 U.S.C. §103. As background information, the prosecution history of the Jarvis '932 Patent will be discussed below, followed by a detailed discussion of Claim 30.

### 1. PROSECUTION HISTORY OF CLAIM 30

The Jarvis '932 Patent issued from U.S. Patent Application Serial No. 10/138,850 (hereinafter "the Jarvis '850 Application") filed May 3, 2002. The claim which issued as Claim 30 of the Jarvis '932 Patent was not included in the Jarvis '850 Application as

originally filed.[2] Instead, Claim 30 was added to the application by way of an Amendment (see paper no. 6) filed in response to a first Office Action (see paper no. 5), which rejected a number of the originally filed claims based upon various prior art grounds. As presented to the USPTO in such Amendment, Claim 30 recited an illuminated polyhedron having, inter alia, the following limitation:

> **a plurality of apertured sides** extending upwardly from the base, **each** side having an **interactive activity**[3] disposed thereon, wherein at least one of the sides comprises an apertured side having a plurality of apertures (emphasis and footnote added)

After conducting an examination of Claim 30, the USPTO Examiner issued a final Office Action (see paper no. 7), rejecting the claim under 35 U.S.C. §102(b). More particularly, the Examiner concluded that Hall U.S. Patent No. 2,575,269 (hereinafter "the Hall '269 Patent") discloses an illumination toy having all of the limitations of Claim 30, including the one quoted hereinabove.

In response, Hasbro submitted another Amendment (see paper no. 8) requesting amendments to Claim 30 (hereinafter "the proposed amendments") which were designed to delete the word "apertured" from the phrase "a plurality of apertured sides" appearing in

---

[2] The Jarvis '850 Application as originally filed included only twenty-nine claims (i.e., original Claims 1-29), all of which called for a toy having a plurality of sides, **each of the plurality of sides** having apertures for receiving pegs. **No other types of surfaces or activities** other than pegboard types were disclosed in the Jarvis '850 Application as originally filed.

[3] The Requester takes this opportunity to provide the following observations concerning the term "interactive activity." Claim 30 represents the first time that this ambiguous term was introduced into the Jarvis '850 Application. More particularly, the term "interactive activity" does not appear anywhere in the application as originally filed (i.e., not in the original specification and not in the original claims). Accordingly, the Requester respectfully submits that the term "interactive activity" constitutes new matter. Based upon a detailed review of the file wrapper history, the Requester also believes that Hasbro intentionally and purposefully misled the Examiner in order to secure the entry of this new matter into the Jarvis '850 Application. Since these issues do not fall within the scope of the reexamination requested herein (see 37 C.F.R. §1.906), the Requester hereby reserves the right to judicially contest the validity and/or enforceability of the Jarvis '932 Patent based upon new matter and/or inequitable conduct/fraud grounds.

the above-quoted limitation. By way of such proposed amendments, Claim 30 required that **only one**, rather than **all**, of the plurality of sides be provided with apertures. Disregarding this fact, Hasbro nevertheless mischaracterized the scope of the amended Claim 30 by stating that "Claims 7-9, 11, 13-15, 18, 19, 23-25 and **30** are amended to more clearly recite that the illuminated toy or polyhedron has a plurality of sides extending upwardly from a base, **with each side having a plurality of apertures**" (emphasis added).[4] In similar fashion, Hasbro proceeded to make the following arguments against the cited prior art:

> Regarding the rejection of claims 7, 8, 14, 15, 18, 21, 22, 25, 30, 31 and 33-35 in view of [U.S. Patent No. 2,575,269 to] Hall, the claims as amended more clearly recite a toy or polyhedron having a plurality of sides extending upwardly from a base, with each side having a plurality of apertures . . . Consequently, Hall . . . does not disclose each upwardly extending side having apertures as recited in the clams . . . Therefore, because Hall does not disclose or suggest having apertures in **each** of the upwardly extending sides of the war game apparatus, it follows that Hall alone neither anticipates nor renders obvious claims 7, 8, 14, 15, 18, 21, 22, 25, 30, 31 and 33-35. (emphasis in original)[5]

Despite the foregoing claim amendments and accompanying arguments, the Examiner denied entry of the proposed amendments to Claim 30 identified in paper no. 8, stating that "[t]he Hall reference meets the claim limitations in that there are a plurality (at least two) of sides with apertures" (see paper no. 9). Hasbro then resorted to a telephonic interview with the Examiner, of which there is no substantive record except for the prosecuting attorney's rendition which appears in the Remarks section of yet a third and

[4] See page 11 of the Amendment After Final Rejection (paper no. 8).

[5] See first full paragraph on page 13 of the Amendment After Final Rejection (paper no. 8).

final Amendment (see paper no. 11). By this third and final Amendment, the above-quoted limitations of Claim 30 were revised as follows:

> an illuminated polyhedron having a base, a plurality of ~~apertured~~ sides extending upwardly from the base, ~~each~~ every side extending upwardly from the base having an interactive activity disposed thereon, wherein at least one of the sides comprises an apertured side having a plurality of apertures.

In issuing the Notice of Allowance, the Examiner stated in the accompanying Reasons for Allowance that the claims of the Jarvis '850 Application, including Claim 30, were allowed because they recited, in the Examiner's own words, the limitation "**every side** extending upwardly from the base having a plurality of apertures" (emphasis added).[6] While some of the allowed claims did, in fact, include this limitation, Claim 30, as well as newly added independent Claims 40 and 41,[7] did not (i.e., Claims 30, 40 and 41 only required that "**at least one** of the [upwardly extending] sides comprises an apertured side having a plurality of apertures"). Regardless of whether the Examiner was intentionally and purposefully misled by Hasbro in concluding that Claims 30, 40 and 41 included the limitation that she identified as the reason for allowing the Jarvis '850 Application, it is clear that she considered the point of novelty for Claim 30, as well as Claims 40 and 41, to be a toy in the form of a polyhedron having a plurality of upwardly extending sides, **each and every one** of which being provided with a plurality of apertures.

As will be established hereinbelow, the Requester respectfully submits that the Examiner's perceived "point of novelty" for Claims 30, 40 and 41 of the Jarvis '850

[6] See page 3 of Notice of Allowability, Reasons for Notice of Allowance (paper no. 12).

[7] Claims 40 and 41 were added to the Jarvis '850 Application, for the first time, by way of the third and final Amendment (see paper no. 11). Like Claim 30, each of Claims 40 and 41 recites that "at least one of the upwardly extending sides comprises an apertured side having a plurality of apertures."

Application is clearly disclosed in at least one prior art reference that was not considered by the Examiner during the prosecution of the application. Had the Examiner been aware of this reference, the Requester firmly believes that she would not have allowed Claim 30, as well as Claims 40 and 41.

2. **CLAIM 30 IS OBVIOUS OVER SVETZ U.S. PATENT NO. 3,604,709 IN VIEW OF HALL U.S. PATENT NO. 2,575,269**

Claim 30 is rendered obvious over Svetz U.S. Patent No. 3,604,709 (hereinafter "the Svetz '709 Patent") in view of the Hall '269 Patent. Since the Svetz '709 Patent (i.e., the primary reference) was not cited or considered during any prior examination of the Jarvis '932 Patent, its teachings, when combined with those of the Hall '269 Patent, raise a substantial new question of patentability with respect to Claim 30. What follows is a detailed discussion of the Svetz '709 Patent and the Hall '269 Patent and their impact on the patentability of Claim 30.

As discussed in the preceding section (i.e., Section IV.A.1), the Examiner allowed Claim 30 during the original prosecution of the Jarvis '850 Application because she mistakenly believed that the claim required the limitation "every side extending upwardly from the base having a plurality of apertures" (emphasis added). The Examiner also believed that this limitation is not disclosed or suggested by the reference applied by her in rejecting Claim 30 of the Jarvis '850 Application (i.e., the Hall '269 Patent). That is, the Examiner perceived that this limitation formed the basis of patentability for Claim 30.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

With reference to the following reproductions of FIGS. 1 and 2 of the Svetz '709 Patent, the board game disclosed therein includes a polyhedron, in which every side projecting from the base has a plurality of apertures. In such circumstances, the "point of novelty" perceived by the Examiner in allowing Claim 30 is clearly anticipated by the Svetz '709 Patent. Accordingly, and as will be discussed in greater detail below, Claim 30 of the Jarvis '932 Patent is unpatentable in view of the Svetz '709 Patent when considered in combination with the Hall '269 Patent.



Fig. 1



Fig. 2

Referring back to the above reproductions of FIGS. 1 and 2, the Svetz '709 Patent discloses a three-dimensional board game (i.e., a toy) including a body which is in the form of a cube (i.e., a polyhedron) and which has sides 1, 2, 3, 4 and a top 5. The body is mounted on the platform 6 having an outwardly extending base portion 7. As illustrated in FIG. 1, the sides 1, 2, 3, 4 project upwardly from the base portion 7. According to the Svetz '709 Patent, each of the sides 1, 2, 3, 4 "has eight horizontal rows of squares, with

alternate squares in each row being black or white" (see column 1, lines 45-47), and "[e]ach of the black squares of the cube . . . is provided at its center with a cylindrical recess or hole 21 adapted to receive the stem 22 of a peg 23" (see column 2, lines 42-45). Since each of the sides 1, 2, 3, 4 has black squares (as indicated by the shaded squares in foregoing FIG. 1), each of which is provided with a hole 21, it is clear that every side of the game board which extends upwardly from the base portion 7 is an apertured side having a plurality of apertures for receiving pegs 23. Accordingly, as discussed above, the Svetz '709 Patent discloses Claim 30's point of novelty as perceived by the Examiner during the original prosecution of the Jarvis '850 Application (i.e., the limitation "every side extending upwardly from the base having a plurality of apertures").

An element-by-element comparison between the illumination toy recited in Claim 30 of the Jarvis '932 Patent and the toy disclosed in the Svetz '709 Patent is illustrated in the following chart, where differences between the respective toys are indicated by underlining.

| **Claim 30 of the Jarvis '932 Patent** | **The Svetz '709 Patent** |
|---|---|
| 30. An <u>illumination</u> toy for simultaneous use by a plurality of users, comprising: | The Svetz '709 Patent discloses a three-dimensional board game (i.e., a toy) for simultaneous use by a plurality of users (see, e.g., FIG. 1 and column 2, lines 47-49). |
| an <u>illuminated</u> polyhedron having a base, | The game board of the Svetz '709 Patent has a body in the form of a cube (see FIG. 1) having a base portion 7 (see, e.g., column 1, lines 37-41). |
| a plurality of sides extending upwardly from the base, | The game board of the Svetz '709 Patent has a plurality of sides 1, 2, 3, 4 extending upwardly from the base portion 7 (see, e.g., column 1, lines 37-41). |

| | |
|---|---|
| every side extending upwardly from the base having an interactive activity[8] disposed thereon, | Every side 1, 2, 3, 4 extending upwardly from the base portion 7 has apertures for receiving pegs and hence an interactive activity (see FIG. 1).[9] |
| wherein at least one of the sides comprises an apertured side having a plurality of apertures, | Each of the sides 1, 2, 3, 4 includes apertures 21 for receiving pegs 23 (see, e.g., column 2, lines 42-45). |
| and an <u>illumination source</u> disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and | No corresponding element disclosed. |
| a plurality of <u>translucent</u> pegs; | The game board of the Svetz '709 Patent includes a plurality of pegs 23 (see, e.g., column 2, lines 42-45). |
| wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. | The holes 21 of the sides 1, 2, 3, 4 are adapted to receive the pegs 23 and retentively engage the pegs 23 (see, e.g., column 2, lines 42-45). |

[8] As discussed above, the limitation "interactive activity" was not included in the originally filed Jarvis '850 Application and does not appear anywhere in the specification of the Jarvis '932 Patent. In such circumstances, the Requester believes that the limitation 'interactive activity" is not supported by the originally filed application in violation of the written description requirement of 35 U.S.C. §112. Nevertheless, since each and every upwardly extending side of the toy disclosed in the Jarvis '932 Patent includes apertures for receiving pegs, for the sole purpose of analyzing Claim 30 in this Request, the limitation "interactive activity" will be construed as covering, inter alia, apertures adapted to receive pegs. In this regard, the Requester notes that, during reexamination, claim limitations are construed to give the broadest reasonable interpretation (see Section G of MPEP §2258). Accordingly, for the purpose of the reexamination requested herein, the limitation "interactive activity" should be construed to include other types of activities. It should, however, be noted that the broadest reasonable interpretation standard does not apply to claim interpretation during a patent infringement lawsuit. Therefore, the construction of the term "interactive activity" endorsed by the Requester in this Request or during the reexamination requested thereby should not apply to the <u>Hasbro v. Rose Art</u> lawsuit.

[9] As discussed in Footnote 8, the term "interactive activity" is being construed to cover, inter alia, apertures adapted to receive pegs.

As illustrated in the foregoing chart, the toy disclosed in the Svetz '709 Patent includes all of the elements recited in Claim 30 of the Jarvis '932 Patent, with the exception of the illumination source and the translucent pegs.[10] With reference to the following reproduction of FIG. 2 of the Hall '269 Patent, this patent discloses all of the elements of Claim 30 which are indicated above as being absent from the toy of the Svetz '709 Patent.[11] More particularly, the Hall '269 Patent discloses a game apparatus (i.e., a toy) having translucent pegs 11, 12, 13, 14, 15, 16 and an illumination source 29 disposed between a pair of game boards 10, 10' provided on a polyhedron. Due to the provision of the illumination source 29, the polyhedron and the pegs 11, 12, 13, 14, 15, 16 are illuminated so as to provide an "arresting eye appeal" (see column 4, lines 55-58) and hence "a very pleasing and attractive game" (see column 5, lines 20-25).

[10] The Svetz '709 Patent technically does not disclose the illumination toy or the illuminated polyhedron recited in Claim 30. However, the "illumination" and "illuminated" elements of Claim 30 are absent from the board game of the Svetz '709 Patent due to the fact that the board game is not provided with an illumination source. Since, the "illumination" and "illuminated" elements of Claim 30 result directly from the fact that the toy recited therein is provided with an illumination source, they will be considered as being part of the "illumination source" of Claim 30.

[11] Besides the Hall '269 Patent, the prior art is replete with toys each having translucent lighted pegs (see, for instance, U.S. Patent Nos. 2,149,363; 3,530,615; 3,568,357; 4,196,539; 4,891,030; 5,324,224; 5,391,105; 5,876,262; 6,032,393; 6,238,261; and 6,800,012 and UK Patent Publication Nos. 1,186,054 and 2,294,151). Accordingly, the teachings of the Svetz '709 Patent can be combined with the teachings of one or more of these additional prior art references to render Claim 30 obvious and therefore unpatentable, thereby raising a substantially new question of patentability with respect to Claim 30. For the sake of brevity, a detailed discussion of these additional references will not be provided in this Request. It is, however, requested that the Examiner consider the additional references in his/her reexamination of Claim 30. The additional references are listed in the attached PTO-1449 Form, and copies of same are enclosed herewith for the Examiner's convenience.



In view of the teachings of the Svetz '709 Patent and the Hall '269 Patent discussed above, it would have been obvious to a person skilled in the art to place the illumination source of the Hall '269 Patent within the toy of the Svetz '709 Patent (hereinafter "the Svetz toy") and replace the pegs of the Svetz '709 Patent with the translucent pegs of the Hall '269 Patent such that they are illuminated by the illumination source. Since the Svetz '709 Patent specifically acknowledges that the toy disclosed therein can be in the form of a hollow cube (see column 3, lines 26 and 27), the illumination source could have easily been placed within the hollow cube without making any significant changes to same. In view of the Hall '269 Patent's specific teaching that its illumination source and the translucent pegs are provided for creating an "arresting eye appeal" (see column 4, lines 55-58) and hence "a very pleasing and attractive game" (see column 5, lines 20-25), a skilled person would have been motivated to make the foregoing modifications in the toy of the Svetz '709 Patent in order to make it more pleasing and attractive.

For the reasons discussed hereinabove, Claim 30 of the Jarvis '932 Patent is rendered obvious over the Svetz '709 Patent in view of the Hall '269 Patent under 35

U.S.C. §103. In view of the fact that the Svetz '709 Patent was not cited or considered during the original prosecution of the Jarvis' 932 Patent, and that it is believed to be more relevant than any of the prior art references cited or considered during such prosecution, a substantial new question of patentability is raised with respect to Claim 30 by the Svetz '709 Patent when considered in combination with the Hall '269 Patent.

### 3. CLAIM 30 IS OBVIOUS OVER ANDERSON ET AL. U.S. PATENT NO. 5,324,224 IN VIEW OF EITHER MAXIM U.S. PATENT NO. 6,186,504 OR SVETZ U.S. PATENT NO. 3,604,709

The illumination toy of Claim 30 is rendered obvious over Anderson et al. U.S. Patent No. 5,324,224 (hereinafter "the Anderson et al. '224 Patent") in view of either Maxim U.S. Patent No. 6,186,504 (hereinafter "the Maxim '504 Patent") or the Svetz '709 Patent. While the Anderson et al. '224 Patent was cited during the original examination of the Jarvis '850 Application, it was not specifically applied by the Examiner in rejecting any of the claims of the Jarvis '850 Application, including Claim 30.[12] Moreover, neither the Maxim '504 Patent nor the Svetz '709 Patent was cited as a considered reference. In such circumstances, it is respectfully submitted that the Anderson et al. '224 Patent, when considered in combination with the Maxim '504 Patent or the Svetz '709 Patent, raises a substantial new question of patentability respect to Claim 30, which issue was not

[12] The fact that the Anderson et al. '224 Patent was cited (but not applied) during the prosecution of the Jarvis '850 Application does not preclude the finding of a substantial new question of patentability. For instance, MPEP §2642 specifies that a substantial new question of patentability can even be based exclusively on a prior art reference which was considered during a previous examination, if that reference is being "presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request." (emphasis original). Moreover, MPEP §2258.01 specifically authorizes reexamination where "the rejection to be made by the examiner will be based on a combination of [previously considered prior art] and art newly cited during the reexamination proceeding."

considered in any prior examination. What follows is a detailed discussion of these prior art references and their impact on the patentability of Claim 30.

Referring to the following reproductions of FIGS. 1 and 2 of the Anderson et al. '224 Patent, the construction toy and light apparatus 10 disclosed therein includes a globe portion 12, a base portion 14, and a plurality of apertures 16 which are formed substantially throughout the entire surface of the globe portion 12 (see, e.g., column 3, lines 50-66). Light transmissive (i.e., translucent) pegs 24 are provided for mounting into the apertures 16 (see, e.g., column 4, lines 4-11), while a light source 22 is positioned within the globe portion 12.




An element-by-element comparison between the illumination toy recited in Claim 30 of the Jarvis '932 Patent and the toy disclosed in the Anderson et al. '224 Patent is illustrated in the following chart, where differences between the respective toys are indicated by underlining.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

| **Claim 30 of the Jarvis '932 Patent** | **The Anderson et al. '224 Patent** |
|---|---|
| 30. An illumination toy for simultaneous use by a plurality of users, comprising: | The Anderson et al. '224 Patent discloses a toy (hereinafter "the Anderson et al. toy") which is adapted for simultaneous use by a plurality of users (see, e.g., FIG. 1 and column 3, line 50). |
| an illuminated polyhedron having a base, | The Anderson et al. toy has an illuminated globe 12 having a base 14 (see, e.g., FIGS. 1 and 6 and column 3, lines 50-53). |
| a plurality of sides extending upwardly from the base, | The globe 12 of the Anderson et al. toy has a plurality of sides (e.g., a front side, a rear side, a left side, a right side, etc.) extending upwardly from the base portion 14 (see, e.g., FIGS. 1 and 6).[13] |
| every side extending upwardly from the base having an interactive activity disposed thereon, | Every side of the Anderson et al. toy extending upwardly from the base portion 14 has an interactive activity in the form of an apertured surface (see FIGS. 1 and 6).[14] |
| wherein at least one of the sides comprises an apertured side having a plurality of apertures, and | Each of the sides of the Anderson et al. toy includes apertures 16 (see, e.g., column 3, lines 55-58 specifying that the apertures 16 are "formed substantially throughout the entire surface of the globe portion 12"). |
| an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and | An internal light source 22 is disposed within the globe portion 12 between the sides thereof such that the light source 22 provides simultaneous illumination to all of the sides (see, e.g., FIGS 1 and 6 and column 3, lines 66 and 67). |

[13] Although the globe 12 of the Anderson et al. toy has a continuous spherical surface, it has a plurality of sides (e.g., a left side, a right side, a front side, a rear side, etc.) extending upwardly from the base portion 14 and therefore satisfies this limitation of Claim 30. The foregoing construction of the term "a plurality of sides" of Claim 30 is consistent with the broadest reasonable interpretation rule set forth in Section G of MPEP §2258 (i.e., during reexamination, claim terms are to be construed to give the broadest reasonable interpretation).

[14] As discussed in Footnote 8, the term "interactive activity" is being construed as covering, inter alia, apertures adapted to receive pegs.

| | |
|---|---|
| a plurality of translucent pegs; | The Anderson et al. toy includes a plurality of light transmissive (i.e., translucent) pegs 24 (see, e.g., column 4, lines 4-6). |
| wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. | The apertures 16 of the sides of the Anderson et al. toy are adapted to receive the translucent pegs 24 and retentively engage the pegs 24 (see, e.g., column 4, lines 4-6 and FIG. 4). |

As can be seen from the foregoing chart, the Anderson et al. toy includes all of the elements recited in Claim 30, except that it is in the shape of a globe and does not therefore specifically include a polyhedron. The Maxim '504 Patent and the Svetz '709 Patent each disclose a toy in the shape of a polyhedron (see, e.g., FIGS. 4 and 6 of the Maxim '504 Patent illustrating an illuminated toy in the shape of a cube and pyramid, respectively; and FIG. 1 of the Svetz '709 Patent illustrating a peg-type toy in the form of a cube). For the following reasons, the Requester respectfully submits that it would have been obvious to a skilled artisan to make the globe of the Anderson et al. '224 Patent in the shape of a polyhedron.

First, the Anderson et al. '224 Patent itself specifically teaches that the globe "may be comprised of any hollow structure or housing of **any shape**" (see column 4, lines 1-3, emphasis added by the Requester). Second, the Maxim '504 Patent specifically teaches the equivalence between many different three-dimensional shapes, including a cube and a pyramid, on the one hand, and a globe, on the other hand (compare the following reproductions of FIGS. 4 and 6 of the Maxim '504 Patent with the following reproduction of FIG. 8). This demonstrates that the selection of a polyhedron over a globe, and vice-versa, is merely a matter of design choice which a person skilled in the art would have found

obvious. In fact, the Jarvis '932 Patent itself acknowledges such equivalence between different three-dimensional shapes (see column 6, lines 13-23, stating that "the toy 10 may have an illuminated polyhedron having any number of apertured sides"). In addition, the Jarvis '932 Patent itself discloses that the apertured sides of the toy "may have an associated curvature if desired" (see column 6, lines 25-28, and FIG. 5 of the Jarvis '932 Patent).

MPEP §2144 also specifies that a change in shape is not a patentable improvement "absent persuasive evidence that the particular configuration was significant." In the foregoing circumstances, it would have been obvious to a skilled person to change the shape of the globe of the Anderson et al. '224 Patent to one of the polyhedron shapes (e.g., a cube) disclosed in either the Maxim '504 Patent (see FIGS. 4 and 6 below) or the Svetz '709 Patent (see the reproduction of FIG. 1 in Section IV.A.2. herein)[15] and to thereby obtain the same toy as recited in Claim 30.

[15] Numerous additional prior art patents disclose toys having polyhedron shapes (see, e.g., U.S. Patent Nos. 3,623,729; 4,535,993; 4,552,362; and 4,811,948). Accordingly, the teachings of the Anderson et al. '224 Patent can be combined with the teachings contained in one or more of these additional patents to render the toy of Claim 30 obvious and therefore unpatentable, thereby raising a substantial new question of patentability with respect to same. For the sake of brevity, a detailed discussion of these additional patents will not be provided in this Request. It is, however, requested that the Examiner consider the additional patents in his/her reexamination of Claim 30. These additional patents are listed in the attached PTO-1449 Form, and copies of same are enclosed herewith for the Examiner's convenience.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US



FIG. 4



FIG. 6



FIG. 8

For the reasons discussed above, Claim 30 of the Jarvis '932 Patent is rendered obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103. Since the Anderson et al. '224 Patent was not relied upon by the Examiner in rejecting any of the claims of the Jarvis '850 Application and since neither the Maxim '504 Patent nor the Svetz '709 Patent was cited or considered during the original prosecution of same, a substantial new question of patentability is raised with respect to Claim 30 by the Anderson et al. '224 Patent considered in combination with either the Maxim '504 Patent or the Svetz '709 Patent.

4. **<u>CLAIM 30 IS OBVIOUS OVER THE MAXIM '504 PATENT IN VIEW OF THE MAXIM U.S. PATENT NO. 6,032,393</u>**

The illumination toy of Claim 30 is rendered obvious over the Maxim '504 Patent in view of Maxim U.S. Patent No. 6,032,393 (hereinafter "the Maxim '393 Patent"). Since neither the Maxim '504 Patent nor the Maxim '393 Patent was cited or considered during the examination of the Jarvis '932 Patent, it is respectfully submitted that the combined teachings of these prior art references raise a substantial new question of patentability respect to Claim 30.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

With reference to the following reproduction of FIG. 4 of the Maxim '504 Patent, it discloses a color-changing puzzle game (i.e., a toy) providing a user with a challenging puzzle to solve. More particularly, the puzzle game is in the form of a cube which includes a base and a plurality of sides extending upwardly from the base. Each of the sides has an array of slidable tiles (see reference numeral 22 in FIGS. 1 and 2) which can be arranged by the user to solve the puzzle and which carry color-producing media. A matrix is provided interior of the tiles and includes color-producing media. A light bulb (see reference numeral 36 in FIG. 2) is positioned within the cube for transmitting light through the respective pairs of color-producing media of the matrix and the color-producing media of the tiles. The respective pairs of the color-producing media "**interact** to produce a light color other than that which would have been produced if the light had passed through only one of the color-producing media" (see column 1, lines 59-62).



FIG.4

The Maxim '504 Patent discloses an alternate embodiment of the toy, which is in the form of an art set whose object is to facilitate the creation of visually pleasing, colorful, and artistic tile arrangements, rather than to provide a puzzle (see FIG. 9 and column 5, lines 33-40). More particularly, in disclosing the art set of FIG. 9, the Maxim '504 Patent specifically teaches that "the above-enumerated list of non-limiting aspects and specific

alternatives . . . apply to the art set as well as to the puzzle apparatus" (see column 6, line 66 – column 7, line 2). Accordingly, the Maxim '504 Patent specifically teaches that the cube-shaped device illustrated in foregoing FIG. 4 can be used as an art set, rather than a puzzle.

Having discussed the toy illustrated in FIG. 4 of the Maxim '504 Patent, it will now be compared to the toy recited in Claim 30 of the Jarvis '932 Patent. More particularly, an element-by-element comparison between these two toys is illustrated in the following chart, where differences between the respective toys are indicated by underlining.

| **Claim 30 of the Jarvis '932 Patent** | **The Maxim '504 Patent** |
|---|---|
| 30. An illumination toy for simultaneous use by a plurality of users, comprising: | The Maxim '504 Patent discloses an illumination puzzle game or an art set (i.e., a toy) which can be used simultaneously by a plurality of users.[16] |
| an illuminated polyhedron having a base, | The toy of the Maxim '504 Patent (hereinafter "the Maxim '504 toy") has a body in the form of a cube (i.e., a polyhedron) having a base (see FIG. 4). |
| a plurality of sides extending upwardly from the base, | The Maxim '504 toy has a plurality of sides extending upwardly from the base (see FIG. 4). |

[16] Due to the fact that the toy of the Maxim '504 Patent is equipped with multiple tiled sides, each of which can be used independently by a single user, it is adapted for simultaneous use by multiple users. Even if it is assumed, for the sake of argument only, that the Maxim '504 Patent does not disclose or suggest a toy adapted for such use, the preamble of Claim 30 merely recites the purpose or intended use of the invention claimed therein and should not, therefore, be considered as a claim limitation (see MPEP §2111.02).

| | |
|---|---|
| every side extending upwardly from the base having an interactive activity disposed thereon, | Every side extending upwardly from the base has an interactive activity which is in the form of slidable tiles (see FIG. 4) which "interact" to produce a certain color (see column 1, lines 59-60).[17] |
| wherein at least one of the sides comprises an apertured side having a plurality of apertures, | No corresponding element disclosed. |
| and an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and | The Maxim '504 toy includes a light bulb disposed between the tiled sides such that it provides simultaneous illumination of all of the plurality of sides (see FIG. 4). |
| a plurality of translucent pegs; | No corresponding element disclosed. |
| wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. | No corresponding element disclosed. |

As illustrated in the foregoing chart, the Maxim '504 toy includes all of the elements recited in Claim 30 of the Jarvis '932 Patent, except that it is not provided with (1)

[17] For the purpose of the reexamination requested herein, the term "interactive activity" of Claim 30 should be construed to cover, inter alia, the slidable tiles and their associated color-producing media of the Maxim '504 Patent. This interpretation of the term "interactive activity" is consistent not only with the broadest reasonable interpretation standard of MPEP §2258, but also with the position taken by Hasbro in the Hasbro v. Rose Art lawsuit. More particularly, in the Hasbro v. Rose Art lawsuit, Hasbro has alleged that Claim 30 is infringed by a product sold by the Requester (hereinafter "the Rose Art Product") which has **only one** side having apertures for receiving pegs. The other three sides of the Rose Art Product feature (i) a **dry erase board** which is simply a flat, smooth (i.e., non-apertured) surface on which a user can directly draw; (ii) a **tracing desk** which is a flat, smooth (i.e., non-apertured) surface with a clip at the top for supporting paper on which a user can draw, trace or write; and (iii) a **neon drawing surface** which is a non-apertured film of clear plastic with a black backer sheet on which a user can draw using a crayon. In such circumstances, it is apparent that Hasbro is interpreting the term "interactive activity" of Claim 30 as having a scope broad enough to cover each and every one of the foregoing three non-apertured sides of the Rose Art Product. Since the slidable tiles of the Maxim '504 Patent are certainly more "interactive" than any of the three non-apertured sides of the Rose Art Product (e.g., they need to be moved by the user and hence require more interaction with him/her), it is respectfully submitted that the proper interpretation of the term for the purpose of this reexamination should include such tiles.

translucent pegs and (2) an apertured side having a plurality of apertures which are adapted to receive and retentively engage the translucent pegs. Both of the foregoing two missing elements, however, are clearly disclosed in the Maxim '393 Patent. For the reasons discussed below, it is respectfully submitted that it would have been obvious to a person skilled in the art to modify the Maxim '504 toy to include the translucent pegs and the apertured side of the Maxim '393 Patent,[18] thereby obtaining the toy recited in Claim 30.

With reference to the following reproductions of FIGS. 1 and 2 of the Maxim '393 Patent, the illuminated image generating apparatus 10 disclosed therein has an image display board 12, which includes a plurality of peg ports (i.e., apertures) 14, and a plurality of translucent pegs 16, which are rotatably fitted in the peg ports 14 (see column 4, lines 50-55) and hence are retentively engaged therein. Each of the pegs 16 has a polarized film sheet 20 attached to a lower end thereof. Polarized sheets 40, 50 underlie the pegs 16 such that when the pegs 16 are rotated, the polarization axis of the polarized sheet 20 of the pegs 16 shift alignment with the axes of the polarized sheets 40, 50, thereby causing the pegs 16 to display different colors. In this manner, the color displayed by each of the

[18] Besides the Maxim '393 Patent, the prior art is replete with illumination devices having a plurality of translucent pegs and an apertured side which includes a plurality of apertures adapted to receive and retentively engage the pegs (see, for instance, U.S. Patent Nos. 2,149,363; 2,575,269; 3,530,615; 3,568,357; 4,196,539; 4,891,030; 5,324,224; 5,391,105; 5,876,262; and 6,238,261 and UK Patent Publication Nos. 1,186,054 and 2,294,151). Accordingly, Claim 30 is equally obvious over the Maxim '504 Patent in view of one or more of these additional prior art references. For the sake of brevity, a detailed discussion of these additional references (with the exception of U.S. Patent No. 2,575,269, which is discussed in detail in section IV.A.2) will not be provided in this Request. It is, however, requested that the Examiner consider the additional references in his/her reexamination of Claim 30. The additional references are listed in the attached PTO-1449 Form, and copies of same are enclosed herewith for the Examiner's convenience.

pegs 16 can be changed by simply rotating the peg 16 within the peg port 14 without removing the peg 16 therefrom (see column 1, lines 51-54).

FIG. 1







The Maxim '393 Patent specifies that one of its objects is "to provide an image creating apparatus having lighted elements in the form of translucent light transmission structures capable of illumination in various colors to combine to form an image such as a pattern or picture" (see column 1, lines 45-49). More particularly, the Maxim '393 Patent specifically recognizes various problems associated with image creating devices utilizing tinted and polarized sheet portions which are positioned one over the other to create desired patterns. For instance, illuminated elements of such devices provide a very limited range of color choices (see column 1, lines 55-57). The device of the Maxim '393 Patent is intended to overcome this limitation by allowing each single peg to produce a number of different colors simply by rotating the peg without its removal from the corresponding peg port.

Referring back to the Maxim '504 Patent, the tiles disclosed therein are adapted to change colors as they move from one position to another. More particularly, such color

change is achieved by providing each tile with a polarizer (see reference numeral 26 in FIG. 2) and positioning an underlying matrix (see reference numeral 40 in FIG. 2) which includes a plurality of polarizing film laminates (see reference numeral 41 in FIG. 2). As each tile 22 is moved from one position to another over the underlying matrix, the tile 22 and its polarizer 26 become aligned with a different one of the polarizing laminates 41 of the matrix 40. Because each of the polarizing laminates 41 of the matrix 40 is orientated differently (i.e., it is provided with a different angle for the axis of polarization) relative to the others, each of the tiles 22 is adapted to emit a different color but only when it is moved to a different position in the array of tiles over the matrix (see, e.g., column 4, lines 8-12).

Due to the foregoing construction of the tiles and their underlying matrix, each of the tiles is adapted to produce only a single, predetermined color at a particular location relative to the matrix (see column 4, lines 8-17). In other words, the device of the Maxim '504 Patent does not allow the tiles to change colors once they are placed at specific locations over the matrix. In such circumstances, the device of the Maxim '504 Patent suffers from the same problem that plagued the prior art devices discussed in the Maxim '393 Patent in that its tiles would provide a very limited range of color choices. While the Maxim '504 Patent teaches that the device illustrated in FIG. 4 thereof can be used as an art set, the above-described problem would severely restrict the device from being used as an art set, which typically requires a wide range of color choices.

As discussed above, the object of the image generating device of the Maxim '393 Patent is "to provide an image creating apparatus having lighted elements in the form of translucent light transmission structures capable of illumination in various colors to combine to form an image such as a pattern or picture" (see column 1, lines 45-49 of the

Maxim '393 Patent). In view of this disclosure, a person skilled in the art would have been motivated to replace one or more tiled sides of the cube-shaped art set shown in FIG. 4 of the Maxim '504 Patent with the apertured side of the Maxim '393 Patent, which side is equipped with a plurality of translucent pegs in order to expand the range of color choices available for the Maxim '504 Patent's device, thereby obtaining the toy recited in Claim 30.

For the reasons discussed above, Claim 30 is rendered unpatentable over the Maxim '504 Patent in view of the Maxim '393 Patent under 35 U.S.C. §103.[19] Since neither the Maxim '504 Patent nor the Maxim '393 Patent was cited or considered during the original prosecution of the Jarvis '932 Patent, a substantial new question of patentability is raised with respect to Claim 30 by the Maxim '504 Patent considered in combination with the Maxim '393 Patent.

## B. CLAIM 31 IS RENDERED OBVIOUS BY THE CITED PRIOR ART

Claim 31 of the Jarvis '932 Patent reads as follows:

> 31. An illumination toy as defined in claim 30, wherein the illuminated polyhedron includes a top disposed above the sides and enclosing the interior of the illuminated polyhedron.

[19] Alternatively, Maxim U.S. Patent No. 6,800,012 (hereinafter "the Maxim '012 Patent") can be used as a secondary reference in place of the Maxim '393 Patent. More particularly, the Maxim '012 Patent, a copy of which is enclosed herewith, discloses a device which is basically identical to the device of Maxim '393 Patent from a patentability standpoint with respect to Claim 30 (i.e., it discloses the two elements of Claim 30 which are not disclosed in the Maxim '504 Patent). Given that the Maxim '012 Patent constitutes a prior art reference under 35 U.S.C. §102(e) against the Jarvis '932 Patent based upon its earlier effective U.S. filing date, it is respectively submitted that the teachings of the Maxim '012 Patent can alternatively be combined with the teachings of the Maxim '504 Patent to reach the conclusion that Claim 30 is unpatentable.

For the following reasons, it is respectfully submitted that Claim 31 is rendered unpatentable over the cited prior art. In such circumstances, the cited prior art raises a substantial new question of patentability with respect to Claim 31.

1. **CLAIM 31 IS RENDERED OBVIOUS OVER THE SVETZ '709 PATENT IN VIEW OF THE HALL '269 PATENT**

As discussed above in Section IV.A.2., the base claim from which Claim 31 depends (i.e., Claim 30) is rendered obvious over the Svetz '709 Patent in view of the Hall '269 Patent. With reference to FIG. 1 of the Svetz '709 Patent, the toy disclosed therein has a top 5 which is disposed above the sides 1, 2, 3, 4 and which encloses the interior of the polyhedron (see also column 1, lines 37-41). Similarly, the toy disclosed in the Hall '269 Patent has a wall 32 closing the top of the game board (see the reproduction of FIG. 1 in Section IV.A.2. herein and in column 5, lines 10-15 of the Hall '269 Patent). Accordingly, the element recited in Claim 31 is specifically disclosed in both the Svetz '709 Patent and the Hall '269 Patent. In such circumstances, the combined teachings of the Svetz '709 Patent and the Hall '269 Patent render Claim 31 obvious and therefore unpatentable under 35 U.S.C. §103.

2. **CLAIM 31 IS RENDERED OBVIOUS OVER THE ANDERSON ET AL. '224 PATENT IN VIEW OF EITHER THE MAXIM '504 PATENT OR THE SVETZ '709 PATENT**

In Section IV.A.3., the Requester concluded that the base claim from which Claim 31 depends (i.e., Claim 30) is rendered obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent. More particularly, the

foregoing conclusion was reached because it would have been obvious to a person skilled in the art to modify the shape of the globe of the Anderson '224 Patent to the cube shape disclosed in either the Maxim '504 Patent or in the Svetz '709 Patent. Since the cube disclosed in each of the Maxim '504 Patent and the Svetz '709 Patent includes the top recited in Claim 31 of the Jarvis '932 Patent (i.e., a top disposed above the sides and enclosing the interior of the polyhedron), the toy of the Anderson et al. '224 Patent modified in the manner as discussed in Section IV.A.3. above would be equipped with the top disclosed in the Maxim '504 Patent or the Svetz '709 Patent. In such circumstances, Claim 31 is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103.

### 3. CLAIM 31 IS RENDERED OBVIOUS OVER THE MAXIM '504 PATENT IN VIEW OF THE MAXIM '393 PATENT

In Section IV.A.4. above, the Requester concluded that Claim 30 (i.e., the base claim from which Claim 31 depends) is rendered unpatentable over the Maxim '504 Patent in view of the Maxim '393 Patent. With respect to Claim 31, the Requester notes that the toy disclosed in the Maxim '504 Patent in the form of a cube (see FIG. 4) including a top, which is identical, in structure and function, to the top recited in Claim 30. Accordingly, Claim 31 is equally obvious over the combined teachings of the Maxim '504 Patent and the Maxim '393 Patent under 35 U.S.C. §103.

## C. CLAIM 32 IS RENDERED OBVIOUS BY THE CITED PRIOR ART

Claim 32 of the Jarvis '932 Patent reads as follows:

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

32. An illumination toy as defined in claim 30 further comprising a plurality of opaque sheets, the at least one apertured side being adapted to receive the opaque sheets, the opaque sheets having indicia thereon corresponding to positions of at least some of the apertures on the at least one apertured side when the opaque sheets are disposed adjacent the at least one apertured side.

For the following reasons, it is respectfully submitted that Claim 32 is rendered unpatentable over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103. In such circumstances, the cited prior art raises a substantial new question of patentability with respect to Claim 32.

As discussed in Section IV.A.3. above, the claim from which Claim 32 depends (i.e., Claim 30) is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent. The following chart illustrates the one-to-one correspondence between the additional elements recited in Claim 32 and the toy disclosed in the Anderson et al. '224 Patent.

| **Claim 32 of the Jarvis '932 Patent** | **The Anderson et al. '224 Patent** |
|---|---|
| 32. An illumination toy as defined in claim 30 further comprising | See the discussion in Section IV.A.3. above. |
| a plurality of opaque sheets, | The Anderson et al. toy has a peg template 38 (see, e.g., FIGS. 1 and 3 and column 4, lines 42-55). |
| the at least one apertured side being adapted to receive the opaque sheets, | The peg template 38 can be received on the surface of the globe of the Anderson et al. toy (see, e.g., FIGS. 1 and 3 and column 5, lines 38-46). |
| the opaque sheets having indicia thereon corresponding to positions of at least some of the apertures on the at least one apertured side when the opaque sheets are disposed adjacent the at least one apertured side. | The peg template has indicia in the form of apertures 40 which corresponds to positions of at least some of the apertures on the globe of the Anderson et al. toy when the peg template is disposed adjacent thereto (see column 5, lines 38-46). |

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

As illustrated above, all of the additional features recited in Claim 32 are found in the toy of the Anderson et al. '224 Patent. In such circumstances, Claim 32 is rendered obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103.[20]

## D. <u>CLAIM 33 IS OBVIOUS OVER THE CITED PRIOR ART</u>

Claim 33 of the Jarvis '932 Patent reads as follows:

> 33. An illumination toy as defined in claim 32, wherein the translucent pegs have a plurality of colors and each indicium of the opaque sheets corresponds to one of the plurality of colors.

For the following reasons, it is respectfully submitted that Claim 33 is rendered unpatentable over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103. In such circumstances, the cited prior art raises a substantial new question of patentability with respect to Claim 32.

As discussed in Section IV.C. above, the claim from which Claim 33 depends (i.e., Claim 32) is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent. The following chart illustrates the one-to-one

---

[20] It is believed that all of the elements recited in Claim 32 are also disclosed in Lebensfeld U.S. Patent No. 3,568,357 (hereinafter "the Lebensfeld '357 Patent). Accordingly, the teachings of the Lebensfeld '357 Patent can be combined with the teachings of the Anderson et al. '224 Patent and the Maxim '504 Patent, or with the teachings of the Anderson et al. '224 Patent and the Svetz '709 Patent, to render Claim 32 obvious and therefore unpatentable. Also, the teachings of the Lebensfeld '357 Patent can be combined with the teachings of the Svetz '709 Patent and the Hall '269 Patent, or with the teachings of the Maxim '504 Patent and the Maxim '393 Patent, to render Claim 32 obvious and therefore unpatentable. The Lebensfeld '357 Patent is listed in the attached PTO-1449 Form, and a copy of same is enclosed for the Examiner's consideration.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

correspondence between the additional elements recited in Claim 33 and the toy disclosed in the Anderson et al. '224 Patent.

| Claim 33 of the Jarvis '932 Patent | The Anderson et al. '224 Patent |
|---|---|
| 33. An illumination toy as defined in claim 32, wherein | See the discussion in Section IV.C. above. |
| the translucent pegs have a plurality of colors and | The translucent pegs of the Anderson et al. toy have a plurality of colors (see, e.g., column 5, lines 20-24). |
| each indicium of the opaque sheets corresponds to one of the plurality of colors. | The Anderson et al. '224 Patent teaches that "the peg template 38 may be color-coded to indicate the particular color to be utilized in the pre-designed pattern" (see column 5, lines 52-54). Accordingly, each of the indicia (i.e., the apertures) of the peg template corresponds to one of the plurality of colors of the translucent pegs. For instance, when the peg template 38 is color-coded to indicate the color red, each indicia corresponds to the same color. |

As illustrated above, all of the additional features recited in Claim 33 are found in the toy of the Anderson et al. '224 Patent. In such circumstances, Claim 33 is rendered obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103.

## E. CLAIM 34 IS RENDERED UNPATENTABLE BY THE CITED PRIOR ART

Claim 34 of the Jarvis '932 Patent reads as follows:

> 34. An illumination toy as defined in claim 30, wherein each side comprises an apertured side having a plurality of apertures.

For the following reasons, it is respectfully submitted that Claim 34 is rendered unpatentable over the cited prior art. In such circumstances, the cited prior art raises a substantial new question of patentability with respect to Claim 34.

1. **CLAIM 34 IS RENDERED OBVIOUS OVER THE SVETZ '709 PATENT IN VIEW OF THE HALL '269 PATENT**

As discussed above in Section IV.A.2., the base claim from which Claim 34 depends (i.e., Claim 30) is rendered obvious over the Svetz '709 Patent in view of the Hall '269 Patent. With reference to FIG. 1 of the Svetz '709 Patent, each side of the toy projecting upwardly from the base includes an apertured side having a plurality of apertures (see the above discussion of the Svetz toy in Section IV.A.2). Accordingly, the additional elements recited in Claim 34 are specifically disclosed in the Svetz '709 Patent. In such circumstances, the combined teachings of the Svetz '709 Patent and the Hall '269 Patent render Claim 34 obvious and therefore unpatentable under 35 U.S.C. §103.

2. **CLAIM 34 IS RENDERED OBVIOUS OVER THE ANDERSON ET AL. '224 PATENT IN VIEW OF THE MAXIM '504 PATENT OR THE SVETZ '709 PATENT**

As discussed in Section IV.A.3., the base claim from which Claim 34 depends (i.e., Claim 30) is rendered obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent. More particularly, the foregoing conclusion was reached because it would have been obvious to a person skilled in the art to modify the shape of the globe of the Anderson '224 Patent to the cubical (i.e., polyhedron) shape disclosed in either the Maxim '504 Patent or in the Svetz '709 Patent. When modified in

this manner, the cube body of the toy disclosed in the Anderson '224 Patent would include four vertically oriented sides, each of which includes an apertured side having a plurality of apertures. In such circumstances, Claim 34 is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103.

### 3. CLAIM 34 IS RENDERED OBVIOUS OVER THE MAXIM '504 PATENT IN VIEW OF THE MAXIM '393 PATENT

As discussed in above Section IV.A.4., Claim 30 (i.e., the base claim from which Claim 34 depends) is rendered unpatentable over the Maxim '504 Patent in view of the Maxim '393 Patent. More particularly, the foregoing conclusion was reached because it would have been obvious to a person skilled in the art to replace one or all of the tiled sides of the Maxim '504 Patent with the apertured side of the Maxim '393 Patent. When all of the tiled sides of the Maxim '504 Patent are modified in this manner, each of the vertically oriented sides of the toy of the Maxim '504 Patent would include an apertured side having a plurality of apertures. In such circumstances, Claim 34 is obvious over the combined teachings of the Maxim '504 Patent and the Maxim '393 Patent under 35 U.S.C. §103.

## F. CLAIM 35 IS RENDERED UNPATENTABLE BY THE CITED PRIOR ART

Claim 35 of the Jarvis '932 Patent reads as follows:

> 35. An illumination toy as defined in claim 30, wherein each side of the illuminated polyhedron is disposed substantially vertically.

For the following reasons, it is respectfully submitted that Claim 35 is rendered unpatentable over the cited prior art. In such circumstances, the cited prior art raises a substantial new question of patentability with respect to Claim 35.

**1. <u>CLAIM 35 IS RENDERED OBVIOUS OVER THE SVETZ '709 PATENT IN VIEW OF THE HALL '269 PATENT</u>**

As discussed in above Section IV.A.2., the base claim from which Claim 35 depends (i.e., Claim 30) is rendered obvious over the Svetz '709 Patent in view of the Hall '269 Patent. With reference to FIG. 1 of the Svetz '709 Patent, each side of the toy disclosed therein projects upwardly from the base and is hence disposed substantially vertically. Accordingly, the additional features recited in Claim 35 are specifically disclosed in the Svetz '709 Patent. In such circumstances, the combined teachings of the Svetz '709 Patent and the Hall '269 Patent render Claim 35 obvious and therefore unpatentable under 35 U.S.C. §103.

**2. <u>CLAIM 35 IS RENDERED OBVIOUS OVER THE ANDERSON ET AL. '224 PATENT IN VIEW OF EITHER THE MAXIM '504 PATENT OR THE SVETZ '709 PATENT</u>**

As discussed in Section IV.A.3., the base claim from which Claim 35 depends (i.e., Claim 30) is rendered obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent. More particularly, the foregoing conclusion was reached because it would have been obvious to a person skilled in the art to modify the shape of the globe of the Anderson '224 Patent to the cubical (i.e., polyhedron) shape disclosed in either the Maxim '504 Patent or in the Svetz '709 Patent. When modified in

this manner, the cube body of the Anderson '224 Patent would include four apertured and vertically oriented apertured sides, thereby meeting the language of Claim 35. In such circumstances, Claim 35 is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103.

### 3. CLAIM 35 IS RENDERED OBVIOUS OVER THE MAXIM '504 PATENT IN VIEW OF THE MAXIM '393 PATENT

As discussed above in Section IV.A.4., Claim 30 (i.e., the base claim from which Claim 35 depends) is rendered unpatentable over the Maxim '504 Patent in view of the Maxim '393 Patent. With reference to FIG. 4 of the Maxim '504 Patent, each side of the cube-shaped toy disclosed therein projects upwardly from the base and is hence disposed substantially vertically as called for in Claim 35. Accordingly, the additional features recited in Claim 35 are specifically disclosed in the Maxim '504 Patent. In such circumstances, Claim 35 is obvious over the combined teachings of the Maxim '504 Patent and the Maxim '393 Patent under 35 U.S.C. §103.

## G. CLAIM 40 IS RENDERED OBVIOUS BY THE CITED PRIOR ART

Independent Claim 40 of the Jarvis '932 Patent is directed to an illumination toy for simultaneous use by a plurality of users. To facilitate consideration and discussion, Claim 40 is reproduced hereinbelow.

> 40. An illumination toy for simultaneous use by a plurality of users, comprising:
>
> an illuminated polyhedron having a base, a plurality of sides extending upwardly from the base and [having] an interactive activity disposed

thereon, wherein at least one of the upwardly extending sides comprises an apertured side having a plurality of apertures, and wherein each apertured side is disposed adjacent at least one other upwardly side having an interactive activity disposed thereon, and an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and

a plurality of translucent pegs;

wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs.

The following claim chart compares the elements of Claim 40 to the elements of Claim 30 of the Jarvis '932 Patent, which is obvious over the prior art cited herein as discussed above in Sections IV.A.2. through 4. A column labeled "Element Nos." has been included in the following chart to designate the elements of Claim 40.

| Element Nos. | Claim 40 of the Jarvis '932 Patent | Claim 30 of the Jarvis '932 Patent |
|---|---|---|
| 1 | 40. An illumination toy for simultaneous use by a plurality of users, comprising: | 30. An illumination toy for simultaneous use by a plurality of users, comprising: |
| 2 | An illuminated polyhedron having a base, | an illuminated polyhedron having a base, |
| 3 | a plurality of sides extending upwardly from the base and having an interactive activity disposed thereon, | a plurality of sides extending upwardly from the base, every side extending upwardly from the base having an interactive activity disposed thereon, |
| 4 | wherein at least one of the upwardly extending sides comprises an apertured side having a plurality of apertures, and | wherein at least one of the sides comprises an apertured side having a plurality of apertures, and |
| 5 | wherein each apertured side is disposed adjacent at least one other upwardly side having an interactive activity disposed thereon, and | No corresponding limitation. |
| 6 | an illumination source disposed between the sides such that the illumination source provides simultaneous | an illumination source disposed between the sides such that the illumination source provides simultaneous |

| | | |
|---|---|---|
| | illumination to all of the plurality of sides; and | illumination to all of the plurality of sides; and |
| 7 | a plurality of translucent pegs; | a plurality of translucent pegs; |
| 8 | wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. | wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. |

With reference to the foregoing chart, it clearly illustrates that Element Nos. 1-4 and 6-8 of Claim 40 are included in Claim 30.[21] The only difference between Claim 40 and Claim 30 is that Claim 40 requires one element which is not included in Claim 30 (i.e., Element No. 5 reciting "each apertured side is disposed adjacent at least one other upwardly side having an interactive activity disposed thereon"). Since Element No. 5 is believed to be insignificant from a patentability standpoint, Claim 40 has a scope which is basically identical to that of Claim 30 and is, therefore, rendered unpatentable based upon the same prior art grounds discussed above in connection with Claim 30 (see Sections IV.A.2 through 4.). Such grounds as applied to Claim 40 will be summarized hereinbelow to facilitate the Examiner's consideration of same.

1. **<u>CLAIM 40 IS RENDERED OBVIOUS OVER THE SVETZ '709 PATENT IN VIEW OF THE HALL '269 PATENT</u>**

As discussed above in Section IV.A.2., Claim 30 is rendered obvious over the Svetz '709 Patent over the Hall '269 Patent. With reference to following reproduction of

[21] In fact, all of Element Nos. 1-3 and 5-7 of Claim 40 (with the exception of Element Nos. 2 and 3) are exact copies of the corresponding limitations of Claim 30. While element Nos. 2 and 3 of Claim 40, are worded slightly different than that from the corresponding limitations of Claim 30, each of them has a scope which is identical to that of the corresponding limitation of Claim 30.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

FIG. 1 of the Svetz '709 Patent, the toy disclosed therein includes a plurality of upwardly extending sides 1, 2, 3, 4, each of which has an interactive activity (e.g., apertures) disposed thereon. With continued reference to the reproduction of FIG. 1, each apertured side is disposed **adjacent** at least one of the other apertured sides 1, 2, 3, 4. In such circumstances, the only element of Claim 40 which is not included in Claim 30 (i.e., Element No. 5 reciting "each apertured side is disposed adjacent at least one other upwardly side having an interactive activity disposed thereon") is specifically disclosed in the Svetz '709 Patent. Accordingly, for the reasons discussed herein and in above Section IV.A.2., Claim 40 is equally obvious over the Svetz '709 Patent in view of the Hall '269 Patent under 35 U.S.C. §103.



Fig. I

As discussed above, the Svetz '709 Patent was not cited or considered during the original prosecution of the Jarvis' 932 Patent. Accordingly, a substantial new question of patentability is raised with respect to Claim 40 by the Svetz '709 Patent when considered in combination with the Hall '269 Patent.

## 2. CLAIM 40 IS RENDERED OBVIOUS OVER THE ANDERSON ET AL. '224 PATENT IN VIEW OF EITHER THE MAXIM '504 PATENT OR THE SVETZ '709 PATENT

As discussed above in Section IV.A.3., Claim 30 is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent. More particularly and with reference to the following reproduction of FIG. 1 of the Anderson et al. '224 Patent, the foregoing conclusion was reached because it would have been obvious to a person skilled in the art to modify the shape of the globe of the Anderson '224 Patent to the cubical (i.e., polyhedron) shape disclosed in either the Maxim '504 Patent or the Svetz '709 Patent. When modified in this manner, the cube of the Anderson '224 Patent would include four apertured, vertically oriented sides, each of which is disposed adjacent at least one other upwardly extending side having apertures, Accordingly, the only element of Claim 40 which is not included in Claim 30 (i.e., Element No. 5 reciting "each apertured side is disposed adjacent at least one other upwardly side having an interactive activity disposed thereon") would specifically be included in the modified cube of the Anderson '224 Patent, thereby meeting the language of Claim 40. In such circumstances, for the reasons discussed in herein and Section IV.A.3. above, Claim 40 is equally obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent under 35 U.S.C. §103.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

Fig. 1




As discussed above, neither the Maxim '504 Patent nor the Svetz '709 Patent was cited or considered during the original prosecution of the Jarvis' 932 Patent. In such circumstances, a substantial new question of patentability is raised with respect to Claim 40 by the Anderson et al. '224 Patent considered in combination with either the Maxim '504 Patent or the Svetz '709 Patent.

### 3. CLAIM 40 IS RENDERED OBVIOUS OVER THE MAXIM '504 PATENT IN VIEW OF THE MAXIM '393 PATENT

Referring back to Section IV.A.4. herein, Claim 30 is rendered unpatentable over the Maxim '504 Patent in view of the Maxim '393 Patent. More particularly, the foregoing conclusion was reached because it would have been obvious to a person skilled in the art to replace one or more of the tiled sides of the Maxim '504 Patent with the apertured side disclosed in the Maxim '393 Patent. With reference to the following reproduction of FIG. 4, the modified, apertured side of the toy of the Maxim '504 Patent would necessarily be

disposed adjacent at least one other upwardly extending side having an interactive activity (i.e., either slidable color-producing tiles or apertures adapted to receive pegs) disposed thereon. Accordingly, the only element of Claim 40 which is not included in Claim 30 (i.e., Element No. 5 reciting "each apertured side is disposed adjacent at least one other upwardly side having an interactive activity disposed thereon") would be included in the modified toy of the Maxim '504 Patent, thereby meeting the language of Claim 40. In such circumstances, Claim 40 is equally obvious over the Maxim '504 Patent under 35 U.S.C. §103 when considered in combination with the Maxim '393 Patent. Since neither the Maxim '504 Patent nor the Maxim '393 Patent was cited or considered during the original prosecution of the Jarvis' 932 Patent, a substantial new question of patentability is raised with respect to Claim 40 by the combined teachings of the Maxim '504 Patent and the Maxim '393 Patent.




FIG. 4

## H. CLAIM 41 IS RENDERED OBVIOUS BY THE CITED PRIOR ART

Independent Claim 41 of the Jarvis '932 Patent is directed to an illumination toy for simultaneous use by a plurality of users. To facilitate consideration and discussion, Claim 41 is reproduced hereinbelow.

> 41. An illumination toy for simultaneous use by a plurality of users, comprising:
>
> an illuminated polyhedron having a base, at least three sides extending upwardly from the base and having an interactive activity disposed thereon, wherein at least one of the upwardly extending sides comprises an apertured side having a plurality of apertures, and an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and
>
> a plurality of translucent pegs;
>
> wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs.

The following claim chart compares the elements of Claim 41 to the elements of Claim 30 of the Jarvis '932 Patent, which was concluded in Sections IV.A.2 through 4. to be unpatentable over the cited prior art. A column labeled "Element Nos." has been included in the following chart to designate the elements of Claim 41.

| Element Nos. | Claim 41 of the Jarvis '932 Patent | Claim 30 of the Jarvis '932 Patent |
|---|---|---|
| | 41. An illumination toy for simultaneous use by a plurality of users, comprising: | 30. An illumination toy for simultaneous use by a plurality of users, comprising: |

| | | |
|---|---|---|
| 1 | an illuminated polyhedron having a base, | an illuminated polyhedron having a base, |
| 2 | at least three sides extending upwardly from the base and having an interactive activity disposed thereon, | a plurality of sides extending upwardly from the base, every side extending upwardly from the base having an interactive activity disposed thereon, |
| 3 | wherein at least one of the upwardly extending sides comprises an apertured side having a plurality of apertures, and | wherein at least one of the sides comprises an apertured side having a plurality of apertures, and |
| 4 | an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and | an illumination source disposed between the sides such that the illumination source provides simultaneous illumination to all of the plurality of sides; and |
| 5 | a plurality of translucent pegs; | a plurality of translucent pegs; |
| 6 | wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. | wherein the apertures of the at least one apertured side are adapted to receive the translucent pegs and retentively engage the translucent pegs. |

The foregoing chart clearly illustrates that all of the elements recited in Claim 41 are included in Claim 30. In fact, all of Element Nos. 1-6 of Claim 41 (with the exception of Element Nos. 2 and 3) are exact copies of the corresponding elements of Claim 30. While element Nos. 2 and 3 of Claim 41 are worded slightly different from the corresponding elements of Claim 30, each of them has a scope which is identical to their counterparts in Claim 30. In such circumstances, for the reasons discussed above in Sections IV.A.2. through 4., it is respectfully submitted that Claim 41 is rendered unpatentable based upon at least the following grounds:

1. Claim 41 is rendered unpatentable over the Svetz '709 Patent in view of the Hall '269 Patent;

2. Claim 41 is rendered unpatentable over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent; and
3. Claim 41 is rendered unpatentable over the Maxim '504 Patent in view of the Maxim '393 Patent.

As discussed above in Sections IV.A.2. through 4., none of the foregoing prior art combinations was considered during the original examination of the Jarvis '932 Patent. In such circumstances, each of these prior art combinations raises a substantial new question of patentability affecting Claim 41.

## I. <u>REMAINING CLAIMS OF THE JARVIS '932 PATENT</u>

With respect to the remaining claims of the Jarvis '932 Patent (i.e., Claims 1-29 and 36-39), most, if not all, of them are rendered unpatentable over the prior art references cited herein. For instance, independent Claims 7, 14 and 36-39 are unpatentable for the same reasons discussed above in Sections IV.A.2 through 4. in connection with Claim 30 (i.e., each of them is obvious over the Svetz '709 Patent in view of the Hall '269 Patent; each of them is obvious over the Anderson et al. '224 Patent in view of either the Maxim '504 Patent or the Svetz '709 Patent; and each of them is obvious over the Maxim '504 Patent in view of the Maxim '393 Patent). Since these claims have not been asserted against the Requester in the <u>Hasbro v. Rose Art</u> lawsuit, no further discussion of the foregoing grounds of unpatentability will be provided herein. However, in view of the United States Patent and Trademark Office's policy of undertaking an examination of all "live" claims of a patent once a reexamination order has been issued (see, e.g., MPEP

§2658), it is respectfully requested that all of the claims of the Jarvis '932 Patent be reexamined if this Request is accepted by the United States Patent and Trademark Office.

## V. Double Patenting Grounds

Besides the grounds of unpatentability discussed above in Section IV. (hereinafter "the prior art grounds"), Requester respectfully submits that at least some of the claims of the Jarvis '932 Patent are unpatentable based upon statutory or judicially created double patenting grounds in view of Jarvis U.S. Patent No. Des. 468,037 issued December 31, 2002,[22] a copy of which is enclosed herewith for the Examiner's consideration. Because the Requester believes the prior art grounds set forth above strongly support the Requester's position that most, if not all, of the claims of the Jarvis '932 Patent are unpatenable, for the sake of brevity, details of the double patenting grounds will not be discussed herein. Nevertheless, it is respectfully requested that the Examiner consider the double patenting grounds when conducting a reexamination of the Jarvis '932 Patent.

---

[22] According to MPEP §804, a utility patent application can be properly rejected on double patenting grounds in view of a previously issued design patent.

Attorney Docket No. 67895-40209
Express Mail Label No. EV 420642954 US

## VI. CONCLUSION

For the reasons discussed hereinabove, a substantial new question as to the patentability of at least one claim (e.g., Claims 30-35, 40 and 41) of the Jarvis '932 Patent has been established which was not raised in any previous examination. Accordingly, it is respectfully requested that an order for reexamination of all of the claims of the Jarvis '932 Patent be issued.

The enclosed Request for Inter Partes Reexamination Request Transmittal Form authorizes the Commissioner to charge the fee as set forth in 37 C.F.R. §1.20(c)(2) to Deposit Account No. 501402. If any additional fees are due in connection with the submission of this Request, the Commissioner is hereby authorized to charge them to Deposit Account No. 501402.

Respectfully submitted,

McCARTER & ENGLISH, LLP

Dated: June 10, 2005

By: RALPH W. SELITTO, JR.
Reg. No. 26,996
Attorney for Requester

Dated: June 10, 2005

By: John K. Kim
Reg. No. 37,002
Attorney for Requester

Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

NWK2: 1304869.04
67895-40209

Sheet 1 of 3

| Form PTO-1449 U.S. Department of Commerce Patent and Trademark Office | Atty. Docket No. 67895-40209 | Patent No. 6,729,932 Serial No. TO BE ASSIGNED |
|---|---|---|
| INFORMATION DISCLOSURE CITATION (Use several sheets if necessary) | Applicant: Brian Marc Jarvis Third Party Requester: Rose Art Industries, Inc. | |
| | Issue Date: May 4, 2004 | Group Art Unit: TO BE ASSIGNED |

U. S. PATENT DOCUMENTS

| *Examiner Initial | | Document Number | | | | | | | Date | Name | Class | Sub-class | Filing Date If Appropriate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AA | D | 4 | 6 | 8 | 0 | 3 | 7 | 12/31/2002 | Jarvis | | | |
| | AB | 1 | 3 | 9 | 3 | 6 | 6 | 5 | 10/11/1921 | Closson | | | |
| | AC | 2 | 1 | 4 | 9 | 3 | 6 | 3 | 03/07/1939 | Rivkin | | | |
| | AD | 2 | 4 | 2 | 9 | 3 | 7 | 9 | 10/21/1947 | Swain | | | |
| | AE | 2 | 5 | 7 | 5 | 2 | 6 | 9 | 11/13/1951 | Hall | | | |
| | AF | 3 | 0 | 6 | 7 | 5 | 3 | 6 | 12/11/1962 | Brittsan | | | |
| | AG | 3 | 5 | 3 | 0 | 6 | 1 | 5 | 09/19/1970 | Meyer | | | |
| | AH | 3 | 5 | 6 | 8 | 3 | 5 | 7 | 03/09/1971 | Lebensfeld | | | |
| | AI | 3 | 6 | 0 | 4 | 7 | 0 | 9 | 09/14/1971 | Svetz | | | |
| | AJ | 3 | 6 | 2 | 3 | 7 | 2 | 9 | 11/30/1971 | Wetherell | | | |
| | AK | 3 | 6 | 3 | 1 | 4 | 7 | 4 | 12/28/1971 | Majewski | | | |

FOREIGN PATENT DOCUMENTS

| *Examiner Initial | | Document Number | | | | | | | Date | Name | Class | Sub-class | Translation | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Yes | No |
| | AL | 1 | 1 | 8 | 6 | 0 | 5 | 4 | 04/02/1970 | Great Britain | | | | |
| | AM | 2 | 2 | 9 | 4 | 1 | 5 | 1 | 04/17/1996 | Great Britain | | | | |
| | AN | | | | | | | | | | | | | |
| | AO | | | | | | | | | | | | | |
| | AP | | | | | | | | | | | | | |
| | AQ | | | | | | | | | | | | | |

OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Page, Etc.)

| | | | |
|---|---|---|---|
| | AR | | |
| | AS | | |
| | AT | | |

| Examiner | Date Considered |
|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Sheet 2 of 3

| | | |
|---|---|---|
| Form PTO-1449 U.S. Department of Commerce Patent and Trademark Office<br><br>INFORMATION DISCLOSURE CITATION<br><br>(Use several sheets if necessary) | Atty. Docket No. 67895-40209 | Patent No. 6,729,932<br>Serial No. TO BE ASSIGNED |
| | Applicant: Brian Marc Jarvis<br>Third Party Requester: Rose Art Industries, Inc. | |
| | Issue Date: May 4, 2004 | Group Art Unit: TO BE ASSIGNED |

U. S. PATENT DOCUMENTS

| *Examiner Initial | | Document Number | | | | | | | Date | Name | Class | Sub-class | Filing Date If Appropriate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AA | 3 | 7 | 1 | 6 | 9 | 3 | 6 | 02/20/1973 | Miller | | | |
| | AB | 4 | 1 | 9 | 6 | 5 | 3 | 9 | 04/08/1980 | Speers | | | |
| | AC | 4 | 5 | 3 | 5 | 9 | 9 | 3 | 08/20/1985 | Topits | | | |
| | AD | 4 | 5 | 5 | 0 | 9 | 1 | 6 | 11/05/1985 | Ortiz | | | |
| | AE | 4 | 5 | 5 | 2 | 3 | 6 | 2 | 11/12/1985 | Oake | | | |
| | AF | 4 | 8 | 1 | 1 | 9 | 4 | 8 | 03/14/1989 | Gutierrez | | | |
| | AG | 4 | 8 | 9 | 1 | 0 | 3 | 0 | 01/02/1990 | Gertzfeld | | | |
| | AH | 5 | 0 | 8 | 8 | 6 | 7 | 8 | 02/18/1992 | Bitan | | | |
| | AI | 5 | 1 | 7 | 4 | 7 | 5 | 7 | 12/29/1992 | Jones | | | |
| | AJ | 5 | 3 | 2 | 4 | 2 | 2 | 4 | 06/28/1994 | Anderson et al. | | | |
| | AK | 5 | 3 | 9 | 1 | 1 | 0 | 5 | 02/21/1995 | Jones | | | |

FOREIGN PATENT DOCUMENTS

| *Examiner Initial | | Document Number | | | | | | | Date | Name | Class | Sub-class | Translation | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Yes | No |
| | AL | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | |
| | AN | | | | | | | | | | | | | |
| | AO | | | | | | | | | | | | | |
| | AP | | | | | | | | | | | | | |
| | AQ | | | | | | | | | | | | | |

OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Page, Etc.)

| | | | |
|---|---|---|---|
| | AR | | |
| | AS | | |
| | AT | | |

| | |
|---|---|
| Examiner | Date Considered |

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Sheet 3 of 3

| Form PTO-1449 U.S. Department of Commerce Patent and Trademark Office | Atty. Docket No. 67895-40209 | Patent No. 6,729,932<br>Serial No. TO BE ASSIGNED |
|---|---|---|
| INFORMATION DISCLOSURE CITATION<br>(Use several sheets if necessary) | Applicant: Brian Marc Jarvis<br>Third Party Requester: Rose Art Industries, Inc. | |
| | Issue Date: May 4, 2004 | Group Art Unit: TO BE ASSIGNED |

U. S. PATENT DOCUMENTS

| *Examiner Initial | | Document Number | | | | | | | Date | Name | Class | Sub-class | Filing Date If Appropriate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AA | 5 | 5 | 5 | 5 | 1 | 6 | 3 | 09/10/1996 | Pisani | | | |
| | AB | 5 | 8 | 7 | 6 | 2 | 6 | 2 | 03/02/1999 | Kelly et al. | | | |
| | AC | 6 | 0 | 3 | 2 | 3 | 9 | 3 | 030/7/2000 | Maxim | | | |
| | AD | 6 | 1 | 8 | 6 | 5 | 0 | 4 | 02/13/2001 | Maxim | | | |
| | AE | 6 | 2 | 3 | 8 | 2 | 6 | 1 | 05/29/2001 | Lang | | | |
| | AF | 6 | 6 | 2 | 6 | 6 | 7 | 5 | 09/30/2003 | Webber | | | |
| | AG | 6 | 8 | 0 | 0 | 0 | 1 | 2 | 10/05/2004 | Maxim | | | |
| | AH | | | | | | | | | | | | |
| | AI | | | | | | | | | | | | |
| | AJ | | | | | | | | | | | | |
| | AK | | | | | | | | | | | | |

FOREIGN PATENT DOCUMENTS

| *Examiner Initial | | Document Number | | | | | | | Date | Name | Class | Sub-class | Translation | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Yes | No |
| | AL | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | |
| | AN | | | | | | | | | | | | | |
| | AO | | | | | | | | | | | | | |
| | AP | | | | | | | | | | | | | |
| | AQ | | | | | | | | | | | | | |

OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Page, Etc.)

| | | | |
|---|---|---|---|
| | AR | | |
| | AS | | |
| | AT | | |

| Examiner | Date Considered |
|---|---|
| | |

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**PLEASE ACKNOWLEDGE RECEIPT BY RETURNING THIS CARD**

**RWS/JKK/dmb**
**Mailed 6/10/05**

**U.S. Patent No. 6,729,932 B2**
**Issued: May 4, 2004**
**For: TOY WITH ILLUMINATED POLYHEDRON**
**Our Ref.: 67895-40209**

1. Request for Inter Parte Reexamination Transmittal Form PTO/SB/58 (2 pages);
2. Request For Inter Partes Reexamination, Including Statement Of Substantial New Question Of Patentability and Detailed Statement Of Pertinency of References (48 pages);
3. Copy of U.S. Patent No. 6,729,932 B2, including Certificate of Correction;
4. Form PTO-1449 (3 pages) with copies of thirty-one (31) references;
5. Certificate of Express Mail (1 page); and
6. Postcard receipt (1 page).